## Commonwealth *v.* Stafford, Appellant.

Submitted November 21, 1972.  Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Nino V. Tinari,* and *Lorch, Ryan, Peruto, Vitullo & Tinari,* for appellant.

*Norris E. Gelman* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, March 16, 1973:

On December 5, 1969, Thomas Holley was found on the highway in the City of Philadelphia bleeding from the head and suffering from facial bruises.  He related to police officers who came to his assistance that he had been robbed and beaten with a crowbar.  Mr. Holley was taken to the hospital where he was treated and detained.  Twenty-four hours later, against medical advice, Mr. Holley signed for his release.  On December 9th he was discovered in the bedroom of his home on

the floor unconscious. He was again taken to the hospital where he died on December 19, 1969, after undergoing brain surgery.

Appellant, Reginald Marcus Stafford, was arrested on February 27, 1970, and charged with being one of a group of young men who committed murder, aggravated robbery and conspiracy. On April 5, 1971, after motions to suppress evidence and statements were denied, a jury found appellant guilty as charged. Following the denial of post-trial motions, he was sentenced to life imprisonment on the indictment charging murder, ten to twenty years imprisonment on the indictment charging aggravated robbery, to run consecutively with the sentence imposed on the murder bill, and sentence was suspended on the bill charging conspiracy. This direct appeal followed from the imposition of sentence.

The first assignment of error is that the court's charge was deficient because it failed to adequately instruct the jury on the issue of causation. The appellant, citing *Commonwealth v. Root,* 403 Pa. 571, 170 A. 2d 310 (1961), and *Commonwealth v. Redline,* 391 Pa. 486, 137 A. 2d 472 (1958), argues that the causal connection required to attach criminal responsibility must be more direct than the tort law concept of proximate cause. With this statement of the law we quite agree. A defendant cannot be convicted unless his conduct, or conduct for which he is legally responsible,[1] was such as to meet the requirements of criminal and not tort law. As will be discussed below, the act of the culprits must constitute a direct and substantial factor in causing the death of the victim.

---

[1] Where death is occasioned by an act committed in furtherance of a felony, all who participate therein are equally guilty. *Commonwealth v. Yuknavich,* 448 Pa. 502, 295 A. 2d 290 (1972) ; *Commonwealth v. Sampson,* 445 Pa. 558, 285 A. 2d 480 (1971) ; *Commonwealth v. Moore,* 443 Pa. 364, 279 A. 2d 179 (1971).

Reading the court's charge as a whole, as we must, see, e.g., *Commonwealth v. Zapata*, 447 Pa. 322, 328 290 A. 2d 114, 117-18 (1972) ; *Commonwealth v. Butler*, 442 Pa. 30, 34, 272 A. 2d 916, 919 (1971), we are convinced that the jury was properly instructed. In defining the crimes charged, it was implicit that the acts of the culprits must be a direct cause of the death to sustain a conviction. Further, the jury was explicitly told that it had to determine how the deceased died and that the Commonwealth had the burden of proving beyond a reasonable doubt every element necessary to constitute the crimes charged.[2]

We also note that although specific objections were made to the charge, there was no objection as to the charge given concerning causation nor was there a request for further instructions on this issue, nor is it contended that this is basic and fundamental error.

Appellant also attacks the charge on the ground that from the evidence presented the jury could have concluded that death resulted from a cause other than the blows administered during the robbery and therefore the court should have framed this issue for the jury. This contention is without merit. Again, we note that there was no request for the court to so charge. Nor was this the thrust of the defense at trial and we are unaware of any law that suggests that the court has the obligation of advancing a theory of defense not raised by the parties.

Appellant next argues that the evidence advanced to establish the causal relationship between the acts for

---

[2] The theory of the Commonwealth in this case, if believed, would necessarily satisfy the test of causation. The Commonwealth's testimony established that the deceased was set upon on the highway by a group of young men and that they administered blows, using a crowbar, to his head and face and that death resulted from the injuries received during this incident.

which he is legally responsible and the death of the victim was insufficient. Specifically, he contends that as a matter of law the blows to the head were not the proximate cause of the deceased's death. We find no merit in this argument since there is nothing in the record to indicate that there was any independent cause of death which supervened the blows inflicted upon the victim during the robbery. As it must, the Commonwealth has proven that the robbers' actions were the direct cause of death. *See Commonwealth v. Johnson,* 445 Pa. 276, 284 A. 2d 734 (1971); *Commonwealth v. Embry,* 441 Pa. 183, 272 A. 2d 178 (1971); *Commonwealth v. Radford,* 428 Pa. 279, 236 A. 2d 802 (1968); *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A. 2d 291 (1966).

Appellant, however, alleges that the facts of this case indicate that the deceased actually fell from his bed so as to independently cause his death. As the Commonwealth points out, the sole and exclusive source of this contention is the testimony of a Mr. Roberts, who was the deceased's employer. He testified that the deceased reported for work on December 7, 1969, but had to be sent home because of his physical condition. On December 9, 1969, Mr. Roberts found the deceased lying on the floor of his room. Mr. Roberts stated that the deceased was "[o]n his side. Looked like he rolled out of bed. I called a red wagon and sent him back to the hospital."

According to the appellant, the mere fact that there was a fall from bed necessitates the conclusion that there was an intervening act which constituted a supervening cause of death. However, assuming that the deceased did fall from bed, this alone could not have caused the injuries which resulted in death. At trial, Dr. Fillinger, the Assistant Medical Examiner of Philadelphia, testified that the post-mortem examination

which he performed revealed that the cause of death was the subdural hemorrhage in two areas of deceased's skull. Dr. Fillinger further testified that the injuries sustained by the victim were consistent with blows inflicted by a crowbar and when asked by defense counsel whether there was a supervening cause of death other than the subdural hemorrhage, he replied: "I can find no supervening or intervening cause which may have caused the death of this individual. His initial injuries present a continuity which terminated in his demise, and I can find nothing which interrupted or produced any major change in this course." Confronted with this evidence, which was contradicted only by appellant's bold assertion that the fall from bed was the substantial factor in deceased's death, we believe that the jury properly rejected the unsubstantiated theory of the defense.

Even assuming that the fall from bed was the immediate cause of death, appellant does not escape criminal responsibility. Unquestionably, the blows to the head were severe and were the direct cause of his deteriorated physical condition which, in turn, ultimately led to his collapsing on the floor. Consequently, appellant is legally responsible for the death since "one charged with homicide cannot escape liability merely because the blow he inflicted is not mortal, or the immediate cause of death. If his blow is the legal cause, i.e., if it started a chain of causation which led to the death, he is guilty of homicide." *Commonwealth v. Cheeks*, 423 Pa. 67, 73, 223 A. 2d 291, 294 (1966). *See also Commonwealth v. Carn*, 449 Pa. 228, 296 A. 2d 753 (1972); *Commonwealth v. Johnson*, 445 Pa. 276, 284 A. 2d 734 (1971); *Commonwealth ex rel. Peters v. Maroney*, 415 Pa. 553, 204 A. 2d 459 (1964).

The appellant offers as his final basis for relief that his age, intelligence, condition at the time of interroga-

tion, and all of the surrounding circumstances would dictate the conclusion that he was not competent to understand the *Miranda* warnings. We believe that the record before us justifies the finding of a knowing and intelligent waiver.

To support this argument the defense relies solely on the defendant's statement that he could not read. First, since the warnings were admittedly given orally it is difficult to understand the relevance of appellant's ability to read on the issue of a knowing and intelligent waiver of his rights. Secondly, the record provided ample basis for the suppression court to challenge his statement as to his inability to read. In fact, the appellant admitted that he had attained a 10th grade education.

A review of the circumstances surrounding the statement clearly rejects a finding of the type of coercion that this court has found offensive. The appellant who was 20 years of age at the time of the questioned interrogation admitted that he was not beaten or threatened. The period of time that elapsed from the beginning of the interrogation until the completion of the formal written statement was five hours during which time he was provided with food. The record of the suppression hearing provides no basis to support appellant's contention that he did not possess the mental capacity to fully appreciate the significance of his constitutional rights and knowingly and intelligently waive them.

As this court recently stated in *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A. 2d 519 (1972), in reviewing the findings of a suppression court: "The question is one of fact initially to be determined by the trial court and where, as here, the suppression court's findings have ample support in the record, we cannot say that the court erred as a matter of law in concluding the confession was admissible." 449 Pa. 44, 296 A. 2d at

102

524. *See also Commonwealth v. Harmon,* 440 Pa. 195, 269 A. 2d 744 (1970); *Commonwealth v. Tabb,* 433 Pa. 204, 249 A. 2d 546 (1969); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A. 2d 426 (1968).

Judgments of sentence affirmed.