366 A.2d 1229

COMMONWEALTH of Pennsylvania

v.

**Harold R. MASSART, Appellant.**

Supreme Court of Pennsylvania.

Oct. 3, 1975.

Rehearing Denied April 20, 1976.

Michael Hahalyak, Pittsburgh, for appellant.

Robert F. Hawk, 1st Asst. Dist. Atty., Butler, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Harold R. Massart, was convicted by a jury of voluntary manslaughter for the death of his wife. Post-trial motions were denied and appellant was sentenced to a term of imprisonment of three to ten years. This direct appeal followed. [1]

There being no witnesses to this occurrence, the Commonwealth was required to establish its case by circumstantial evidence. It relied heavily on the testimony of a state criminologist. Appellant now argues that the testimony of this witness should have been excluded because there was no sufficient foundation for its admission.

When the police arrived at the scene in response to a call from a neighbor at the husband's request, they observed the body of the victim lying on the second floor of the Massart home. Examination by the pathologist revealed that a blow to the head caused Mrs. Massart to lose consciousness which resulted in loss of control of the digestive tract and suffocation from regurgitated food particles. Appellant informed the police that a "glassy-eyed hippie-type" intruder had forced his way into their home, struck him and apparently attacked his wife during the time that he (appellant) was unconscious. [2] The police, at the time of their arrival on the scene, had ob-

[1]. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202; 17 P.S. § 211.202(1) (Supp.1974–75).

[2]. Appellant also conjectured that in the ensuing melee (while he was unconscious) his wife may have either fallen or, because of fear, choked.

served a superficial wound on the person of the appellant.

To contradict this version, the Commonwealth called a Mr. Plankenhorn, whose qualifications as a criminologist have not here been challenged. He testified that a piece of sailcloth which was found on the person of the appellant and covered with blood of the deceased had been tested by him to determine whether it had been in contact with a claw hammer which the Commonwealth contended was the murder weapon. The test performed was accomplished through fluorescence. As a result, he testified that he found metal particles in the shape of a claw on the sailcloth. He further stated that he fluoresced a similar, though unidentified, substance on both the hammer and the sailcloth.

This testimony was particularly crucial to the Commonwealth's case because, through other evidence, they were able to establish that the hammer belonged to the appellant and that it was found after the incident in the basement in an area where appellant had a workbench with his tools and equipment. There was also testimony that blood matching appellant's blood type was found in the area where the hammer was found although appellant, in his version of what occurred, made no mention of entering the basement portion of the house after the entry by the intruder.

In his attack on the admissibility of the evidence of Mr. Plankenhorn, appellant asserts, a) that the tests were not conducted in a sufficiently scientific manner, b) that the Commonwealth's evidence failed to exclude the possibility that the sailcloth had been wrapped around the hammer at some point well after the incident and possibly by police investigators, and c) that the testimony regarding the sailcloth was completely speculative and based on a physical impossibility. The criminologist's opinion was limited to the fact that at some point

the sailcloth was wrapped around an instrument similar to the hammer, and that there was a similar substance on both the hammer found in the basement and the sailcloth. This very limited opinion evidence was based on experiments and observations of the criminologist himself to which he testified in great detail. Consequently there was a proper foundation for the testimony. See generally, *McCormick on Evidence*, § 10 (2d ed. 1972). As this Court stated in *Commonwealth v. McIntyre*, 451 Pa. 42, 301 A.2d 832 (1972): "The weaknesses only indicate that the Commonwealth was not able to provide an airtight case with all the 'T's' crossed. This is not unusual when there are no eyewitnesses." *Id.* at 47, 301 A.2d at 834. Appellant had the opportunity to argue before the jury his theory that the sailcloth was wrapped around the hammer at some point other than during the incident. That was an issue for the trier of fact to resolve. It does not affect the admissibility of the opinion evidence.

Appellant next claims that the evidence was insufficient to sustain the verdict because the Commonwealth failed to prove beyond a reasonable doubt that appellant used the hammer to strike decedent and that this blow caused decedent's death. In answer to this claim it must be noted at the outset that:

> "[I]t is not necessary that each piece of evidence be linked to the defendant beyond a reasonable doubt. It is only necessary that each piece of evidence include the defendant in the group who could be linked while excluding others, and that the *combination* of evidence link the defendant to the crime beyond a reasonable doubt." *Commonwealth v. Petrisko,* 442 Pa. 575, 580, 275 A.2d 46, 49 (1971).

The evidence presented here consisted of the fact that decedent died by choking on food particles regurgitated during unconsciousness caused by a blow to the head; that

appellant was present when his wife died; that appellant and decedent were having marital difficulties; that shortly after the incident appellant's blood was found in both the bathroom and basement workbench area; that a hammer whose claw was capable of inflicting the type of curved wound on decedent's head [3] was also found in the workbench area; that appellant's version of the incident provided no explanation for the presence of his blood in the workbench area; that appellant had in his possession shortly after the incident the piece of sailcloth in question; and that sometime before the trial in this matter the sailcloth had been wrapped around a hammer and there was a similar substance on the sailcloth and the hammer found in the basement.

Viewing this evidence in the light most favorable to the verdict winner, *Commonwealth v. Murray*, 460 Pa. 605, 608, 334 A.2d 255, 257 (1975), the jury was justified in finding that the appellant used this hammer to strike the decedent.

With reference to the second part of appellant's contention that the Commonwealth failed to establish causation, the testimony of the pathologist clearly supplies sufficient evidence to support a finding of this element. Further, it is immaterial that the blow was not the immediate cause of death. Under the Commonwealth's evidence this wound set in motion a chain of events which caused the death of Mrs. Massart.

"One charged with homicide cannot escape liability merely because the blow he inflicted is not mortal, or the immediate cause of death. If his blow is the legal cause, i. e., if it started a chain of causation which led to the death, he is guilty of homicide." *Commonwealth v. Stafford*, 451 Pa. 95, 100, 301 A.2d 600, 604

---

**3.** Appellant contests that the hammer was capable of causing the curved wound. However, our reading of the record sustains such a conclusion.

(1973) quoting *Commonwealth v. Cheeks,* 423 Pa. 67, 73, 223 A.2d 291, 294 (1966).

Lastly, appellant's argument that the trial judge erred in instructing the jury that there was no evidence of accidental death, was waived for failure to take a specific exception to this charge before the jury retired to deliberate. See Pa.R.Crim.P. 1119(b); *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. Raison,* 458 Pa. 378, 326 A.2d 284 (1974); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

Accordingly, the judgment of sentence is affirmed.