369 A.2d 325
**COMMONWEALTH of Pennsylvania**
v.
**Stephen SISCA, Appellant.**

Superior Court of Pennsylvania.

Submitted June 16, 1975.

Decided Nov. 22, 1976.

Frank J. Marcone, Media, for appellant.

Ralph B. D'Iorio and John G. Siegle, Assistant District Attorneys, Media, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Delaware County, Criminal Division, by the defendant-appellant, Stephen Sisca, after conviction of involuntary manslaughter in a jury trial. The defendant was sentenced to a prison term of one (1) to three (3) years.

On August 15, 1972, an accident occurred in which the defendant, operating a 1962 Chevrolet automobile, struck a bicycle, ridden by a nine (9) year old boy, Paul Gross. As a result of the collision the boy was thrown into the air, landing on the hood and windshield of the defendant's vehicle. The boy was killed immediately. The cause of death was decapitation. The trial of the defendant took place on October 29 and 30, 1973, after which the jury returned a verdict of guilty against the defendant on a charge of involuntary manslaughter. A demurrer to the charge of voluntary manslaughter was sustained by the trial court. The defendant was sentenced on October 11, 1974, and this appeal followed.

The defendant raises several issues on appeal. First, he claims that the evidence adduced at trial was not sufficient to sustain a determination of guilt by the jury and that the court below should have also sustained his demurrer on the involuntary manslaughter charge. Secondly, he claims that the prosecutor's reference to "standard charts" for determining the speed of a vehicle by measuring skid marks was so prejudicial so as to require a new trial. Thirdly, he claims that the trial court erred in permitting a Commonwealth witness to testify as to

the speed of the defendant's vehicle when the witness did not see the accident. He also claims that the testimony of another Commonwealth witness, a passenger in the defendant's vehicle, should have been stricken because of the witness's uncertainty.

At trial the Commonwealth produced testimony that on the date of the accident the defendant was operating his vehicle in an easterly direction in the 1200 block of Fairview Avenue in Haverford Township. Paul Gross rode his bicycle out of the driveway of his home at 1219 Fairview Avenue and turned at an angle in an easterly direction. When the boy was in front of the driveway of the adjacent home at 1215 Fairview Avenue he was struck from behind by the defendant's automobile. As a result of the collision the boy was killed. The defendant's automobile left unbroken skid marks 133 feet in length on the roadway. The skid marks began 15 feet to 18 feet before the automobile reached the driveway out of which the boy rode the bicycle. The bicycle came to rest 53 feet beyond the end of the skid marks and the boy's body came to rest 34 feet diagonally from the end of the skid marks. His body had been thrown into the air to a height exceeding that of a truck which was parked nearby.

A passenger in the Sisca vehicle testified at trial that the defendant had been travelling at about 30 miles per hour at the time of the accident. The witness qualified his testimony by saying he actually couldn't be positive of the speed. This witness was a lifelong friend of the defendant and was not co-operative with the Commonwealth. Another Commonwealth witness, a George Van Dusen, testified that 30 seconds to a minute before he heard the crash he saw the defendant's vehicle pass his house at a speed of 30 miles per hour. He testified that he had been a licensed operator of motor vehicles for 29 years and had estimated speeds of other vehicles about a dozen times over those 29 years. He saw the defendant's

vehicle for 3 to 4 seconds. He did not see the accident occur. The deceased boy's brother also testified to hearing a screeching of brakes before the crash then looking up and seeing the defendant's vehicle smoking and skidding immediately prior to the impact. It was also established at trial that the speed limit on Fairview Avenue was 25 miles per hour, that the roadway was straight, and that the weather was sunny and dry at the time of the accident. There was also testimony to the effect that the driveway from which the boy entered the roadway was lined with shubbery making it difficult to see from the roadway. The deceased boy had come out onto Fairview Avenue from the driveway and had proceeded about 10 feet on Fairview Avenue when he was struck from behind by defendant's automobile.

To be found guilty of involuntary manslaughter it must be proven that the defendant acted unlawfully in causing the death of another. *Commonwealth v. Aurick*, 342 Pa. 282, 19 A.2d 920 (1941). In *Aurick*, supra, the court went on to say that:

> "It is immaterial whether the unlawful act which is an essential of involuntary manslaughter was unlawful in its inception e. g. discharging a deadly weapon into a crowded street, or became unlawful after it was begun, e. g. driving a car in a public street and so accelerating its speed as to make it naturally tend to cause death or great bodily harm to persons in that street."

However, not every violation of the law or unlawful act committed while operating a motor vehicle will render the driver criminally liable for a death resulting from an accident in which the vehicle is involved. The driver's conduct must be reckless, careless or wanton before he can be convicted of involuntary manslaughter by automobile. *Commonwealth v. Clowser*, 212 Pa.Super. 208, 239 A.2d 870 (1968). It is also necessary that it be shown that there existed a direct causal connection between the reckless conduct on the part of the operator and the

130

ensuing death. *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961). A violation of The Vehicle Code is only evidence tending to prove criminal negligence, but does not constitute manslaughter per se. See, *Commonwealth v. Clowser,* supra. At first glance the principles enunciated in *Clowser* and *Root,* supra, may seem to contradict the principle set forth in *Aurick,* supra, that a death caused by an unlawful act of the defendant could support a conviction of involuntary manslaughter.

■ However, upon closer examination of *Aurick,* supra, we see that such is not the situation for in that case the court made it clear that defendant's unlawful act had to be the cause of the death of another. Therefore, an act on the part of the accused which contained elements of unlawfulness would not be sufficient to support an involuntary manslaughter conviction unless it could be proven that the unlawful act was the cause of the decedent's death. Of course, the element of causation can be inferred from the attendant circumstances. For example, the operator of a motor vehicle travelling at a speed far in excess of the speed limit can be inferred to have caused the death of a passenger in his vehicle in the event that he was involved in an accident while travelling at such a speed and in the event that the accident resulted in the passenger's death. By the same token an operator of a motor vehicle who is in violation of the law because his rear tail light is not in working condition would not be guilty of involuntary manslaughter in the event of the death of his passenger in an accident where the accident is caused by an occurrence having nothing to do with the inoperability of the tail light. The element of causation, therefore, depends upon the facts and circumstances of each individual case. The issue in the instant case is whether taking as true, the testimony of the Commonwealth witnesses, there was sufficient evidence produced by the Commonwealth by which the jury could infer such conduct. The Commonwealth adequate-

ly established that the defendant's vehicle was travelling at a speed of 5 miles in excess of the speed limit. See, *Commonwealth v. Honeycutt,* 227 Pa.Super. 265, 323 A. 2d 775 (1974). However, this in and of itself was not sufficient to prove the degree of recklessness necessary for a conviction of involuntary manslaughter. Nor could it be inferred that the accident would not have occurred even if the defendant had been obeying the speed limit.

In this case there is an allegation of a misdemeanor-manslaughter theory, to wit: 5 miles over the speed limit. We must determine whether such deviation met the standard of culpability required for involuntary manslaughter and whether this is in itself sufficient to establish guilt beyond a reasonable doubt. We must then also determine whether this deviation by itself under the circumstances of this case, was the conduct that caused the unfortunate death. See, *Commonwealth v. Kominsky,* 240 Pa.Super. 532, 361 A.2d 794 (filed June 28, 1976). It is difficult to conceive under all the evidence that the accident would not have occurred even if the defendant had been obeying the speed limit of 25 miles per hour.

The decedent had suddenly entered onto a public roadway on his bicycle and had proceeded only about 10 feet when he was struck. The driveway from which he entered the roadway was at least partially obstructed from the view of motor vehicles on Fairview Avenue by shrubbery. The defendant did attempt to stop his vehicle. Under these circumstances it was mere speculation on the part of the jury as to whether the defendant's excessive speed was a causative factor in the accident. Therefore, we hold that the defendant's demurrer to the charge of involuntary manslaughter should have been granted. Of course, the length of the skid marks on the roadway lends some doubt as to speed of the defendant's vehicle. The testimony of 30 miles per hour as the defendant's speed may have been too low. Since there was testimony as to defendant's speed, however, it was not

established that he was travelling at any greater rate of speed so such a conclusion would be mere speculation.

■■ We must also recognize that the decedent himself acted in such a manner so as to manifest a disregard for his own safety when he suddenly entered a public roadway from a "blind driveway". The standard of care required of vehicles on public highways is well settled, and must be observed by the bicycle rider. *Davis v. Moylan,* 354 Pa. 508, 47 A.2d 641 (1946). See also, the Act of April 23, 1889, P.L. 44, § 1, 75 P.S. § 2201 of the former Motor Vehicle Code of Pennsylvania relating to the rights and responsibilities of bicycle operators on public roadways. In the instant case the testimony revealed that the decedent failed to yield the right of way when entering a public thoroughfare from a private driveway thereby placing himself in a position of potential danger. While this fact would not necessarily exonerate the defendant from guilt had the defendant been acting in a manner so as to manifest a disregard for human life by engaging in reckless or wanton conduct, it does bear on the case at hand since we have held that the evidence produced at trial was insufficient to establish such conduct on the defendant's part.

For the reasons stated above, we reverse the conviction and order the defendant discharged.

HOFFMAN and CERCONE, JJ., concur in the result.

PRICE, J., files a dissenting opinion.

PRICE, Judge, dissenting:

I must again dissent to the majority's concept of sufficiency of evidence to sustain a conviction of Involuntary Manslaughter. *Commonwealth v. Greer,* 232 Pa.Super. 448, 335 A.2d 770 (1975) (dissenting opinion of Price, J., at p. 450).

In the instant case the majority accurately states the facts which, in view of the jury's verdict of guilt, must

be considered in the light most favorable to the verdict winner. From this evidence there is (a) evidence of a violation of the speed limit, (b) skid marks of 133 feet, buttressed by Commonwealth's Exhibit C–5 which portrays the skid marks from all four wheels, (c) testimony of the screech of brakes and smoke coming from the tires of appellant's car, (d) the victim's bicycle coming to rest 53 feet beyond the skid marks and (e) the victim's body, almost completely decapitated, being thrown into the air to a height exceeding that of a truck parked nearby and coming to rest 34 feet beyond the skid marks.

It is true that the nine year old victim may have acted, as many young children do, with an impulsive disregard of his own safety. Nevertheless, it is a fact that he had turned onto the roadway, and proceeded some distance before his bicycle was struck from the rear by appellant's car.

This evidence does support a verdict of guilty of the crime of involuntary manslaughter since the jury could, and did, find appellant's conduct to be a departure from prudent conduct which was a disregard of human life or an indifference to consequences.

I find no merit to appellant's other allegations of error, and would affirm the judgment of sentence.