625 A.2d 1259

**COMMONWEALTH of Pennsylvania**

v.

**William Anthony NICOTRA, Sr., Appellant.**

Superior Court of Pennsylvania.

Submitted March 15, 1993.

Filed June 7, 1993.

602

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Claire C. Capristo and James R. Gilmore, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

William Anthony Nicotra, Sr. was tried non-jury and was found guilty of driving while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(a)(1) and (a)(4); homicide by vehicle while driving under the influence of alcohol in violation of 75 Pa.C.S. § 3735; homicide by vehicle in violation of 75 Pa.C.S. § 3732; involuntary manslaughter in violation of 18 Pa.C.S. § 2504; aggravated assault in violation of 18 Pa.C.S. § 2702(a)(1); recklessly endangering another person in viola-

tion of 18 Pa.C.S. § 2705; and careless driving in violation of 75 Pa.C.S. § 3714. Post-trial motions were denied, and Nicotra was sentenced to serve consecutive terms of imprisonment for not less than three (3) years nor more than six (6) years for homicide by vehicle while driving under the influence of alcohol, not less than thirty (30) days nor more than sixty (60) days for drunk driving pursuant to 75 Pa.C.S. § 3731(a)(1) and not less than one (1) year nor more than two (2) years for aggravated assault.[1] On direct appeal from the judgment of sentence, Nicotra argues that there was insufficient evidence to sustain his convictions for homicide by vehicle while driving under the influence of alcohol, homicide by vehicle, involuntary manslaughter or aggravated assault because the Commonwealth failed to prove beyond a reasonable doubt that his intoxication and reckless driving caused the traffic accident on which the charges were based.[2] He also contends that his conviction for drunk driving should have merged for purposes of sentencing with his conviction for homicide by vehicle while driving under the influence of alcohol.

 In evaluating a challenge to the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each and every element of the crimes charged was established beyond a reasonable doubt. See: *Commonwealth v. Smith*, 523 Pa. 577, 581, 568 A.2d 600, 602 (1989); *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). "[I]t is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence pro-

---

1. No further penalty was imposed on the remaining convictions.
2. Because the issue of the sufficiency of the evidence was raised in post-trial motions and addressed by the trial court, we find no merit in appellant's further contention that his trial counsel was ineffective for failing to adequately preserve the issue for appellate review. The issue was, in fact, preserved for review and, therefore, is properly before this Court for consideration on its merits.

duced. The factfinder is free to believe all, part or none of the evidence." *Commonwealth v. Tate,* 485 Pa. 180, 182, 401 A.2d 353, 354 (1979). See also: *Commonwealth v. Guest,* 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Rose,* 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). In addition, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan,* 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati,* 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

So viewed, the evidence at trial established that, on February 21, 1991, at or about 5:00 p.m., appellant was observed operating a white Chrysler automobile at a high rate of speed, driving through three stop signs without braking or reducing speed, and then making a hard left turn, with tires screeching, onto Ohio River Boulevard in Allegheny County. Once on Ohio River Boulevard, appellant moved in a southerly direction at speeds estimated to exceed the posted speed limit by approximately ten to twenty miles per hour. As appellant approached the intersection with Meade Avenue, he abruptly changed lanes, without signaling, to pass several cars that were waiting to make a left turn. At the same time, i.e., approximately 5:15 p.m., Lorainne Billie was operating a Chevrolet Nova automobile in a northerly direction on Ohio River Boulevard, with her friend Donna Hollis riding as a passenger. Billie proceeded to slow her vehicle and signaled to make a left turn into an Amoco gas station located a short distance south of the intersection of Ohio River Boulevard and Meade Avenue. Prior to starting her turn, Billie waited for oncoming traffic to pass and, when the way was clear, began making the turn. After Billie had started making the turn, her passenger, Donna Hollis, screamed. When Billie looked to her right, she observed appellant's vehicle coming directly at her. Billie attempted to accelerate her vehicle to avoid a collision, but to no avail. Appellant's vehicle struck the pas-

senger side of Billie's vehicle. At the time of impact, Billie had almost completed her turn, for the front end of her vehicle had already entered the ramp to the gas station. The force of the collision pushed Billie's vehicle into a nearby utility pole.

At the scene of the accident, appellant was described by police and civilian witnesses as having an odor of alcohol on his breath, with glassy, bloodshot eyes, slurred speech, and an evident lack of coordination. There was also evidence that appellant had not been wearing eyeglasses at the time of the accident, despite a restriction on his driver's license which required him to wear corrective lenses while operating a vehicle. After appellant had been placed under arrest for drunk driving, he was transported to the hospital for a blood test. This test was performed approximately one hour after the accident and disclosed that appellant's blood alcohol content was .218%.

Both occupants of the Billie vehicle were taken to the hospital for medical treatment. Lorainne Billie suffered injuries, including permanent scarring of her right arm, which required hospitalization for a period of four days. Donna Hollis suffered severe traumatic injuries and died shortly after her arrival at the hospital.

The Commonwealth called Detective Gary Tallent as an expert witness on the reconstruction of traffic accidents. Tallent testified that there had been no adverse weather conditions on the day of the accident and no observable defects to the roadway, which could have contributed to the cause of the accident. He testified further that he was able to identify two successive sets of skid marks from appellant's vehicle in the southbound lane of Ohio River Boulevard, adjacent to the curb. These tire marks were measured to be 85.7 feet in length and led up to the point of impact. Tallent said it appeared that appellant had initially braked his vehicle, after which he briefly took his foot off the brake pedal and then again applied the brakes. Regarding the circumstances surrounding the collision of appellant's vehicle with the vehicle operated by Lorainne Billie, the witness opined as follows:

The front end damage to the Nicotra vehicle indicated that's where his vehicle struck the Nova. The damage to the Nova was significantly along the right side and matched with the damage of the front end of the Nicotra vehicle, so I was able to say, obviously, that the front end of the Nicotra vehicle struck the right side of the Lorainne Billie car at nearly a right angle, or a broadside type situation. Along with those findings I found or located those scuff marks which were in the entrance ramp to the Amoco station. Those scuff marks indicated that the Nova was partially into the gas station at the time of the collision. The front end of that vehicle, the tires and approximately the first third of that vehicle, would have entered onto the ramp of the Amoco station at the time of the collision. What happened at that point was the Nicotra vehicle struck the right side of the Nova and drove the Nova sideways, which created those scuff marks. The Nova was driven basically in a northerly, slightly northwesterly direction. I'm sorry, southwesterly direction. The left rear tire of the Nova then hits a high curb and then proceeded to strike against the steel utility pole, which created additional damage along the left side of the car.

Based upon the position of the skid marks leading to the point of impact and the gouge marks on the roadway at the point of impact, Detective Tallent was able to opine further that at the time of collision, appellant's vehicle had been moving at a high rate of speed.

The Commonwealth also presented the testimony of Dr. Wagdy Wahba, the manager of the Allegheny County Toxicology Laboratory, who testified regarding the effects of alcohol upon the central nervous system. He stated that alcohol acts as a depressant and has an adverse effect upon a person's sensory functions, i.e., hearing and vision. It also affects his or her motor functions and his or her judgment. A person who is under the influence of alcohol, Dr. Wahba testified, would have a slowed reaction time, which would delay the time in which he or she could move his or her foot from the accelerator to the brake of an automobile. Also, Dr. Wahba

said, alcohol would affect a person's judgment by decreasing his or her inhibitions, thereby increasing the chances of risk taking. According to Dr. Wahba, a person with a blood alcohol content of .218% would not have the capability to operate a motor vehicle safely.

Appellant concedes that the Commonwealth's evidence established that he had been driving while intoxicated and in excess of the speed limit. He argues, however, that there was no evidence that his intoxication or his speeding had caused the accident in which Lorainne Billie was injured and Donna Hollis was killed. He suggests that the evidence at trial established that he had entered the intersection of Ohio River Boulevard and Meade Avenue with a green traffic light and had attempted to stop his vehicle upon observing Billie's vehicle turn directly into his path. Absent evidence that the accident would not have occurred if he had not been intoxicated and/or speeding, appellant argues, his convictions for homicide by vehicle while driving under the influence of alcohol, homicide by vehicle, involuntary manslaughter and aggravated assault cannot be sustained. We disagree.

In *Commonwealth v. Lenhart,* 520 Pa. 189, 553 A.2d 909 (1989), the Pennsylvania Supreme Court observed that, in order to sustain a conviction for homicide by vehicle while driving under the influence of alcohol, the defendant's act of driving under the influence of alcohol must be established, beyond a reasonable doubt, to be the cause of the victim's death. *Id.* at 193, 553 A.2d at 911. Similarly, a conviction for homicide by vehicle requires the Commonwealth to establish that the defendant deviated from the standard of care established by the underlying traffic regulation which is alleged to have been violated and that the defendant's violation of that traffic regulation was the cause of the victim's death. *Commonwealth v. Heck,* 517 Pa. 192, 197, 535 A.2d 575, 578 (1987); *Commonwealth v. Field,* 490 Pa. 519, 525, 417 A.2d 160, 163 (1980). "The causal analysis in a homicide by vehicle case focuses on whether death was a probable consequence of the defendant's actions." *In the Interest of Hyduke,* 371 Pa.Super. 380, 388, 538 A.2d 66, 70 (1988). See also: *Common-*

*wealth v. Uhrinek,* 518 Pa. 532, 539, 544 A.2d 947, 950–951 (1988). However,

> not every violation of the law or unlawful act committed while operating a motor vehicle will render the driver criminally liable for a death resulting from an accident in which the vehicle is involved. The driver's conduct must be reckless, careless or wanton before he can be convicted of involuntary manslaughter by automobile. *Commonwealth v. Clowser,* 212 Pa.Super. 208, 239 A.2d 870 (1968). It is also necessary that it be shown that there existed a direct causal connection between the reckless conduct on the part of the operator and the ensuing death. *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961). A violation of The Vehicle Code is only evidence tending to prove criminal negligence, but does not constitute manslaughter per se. See, *Commonwealth v. Clowser, supra.*

*Commonwealth v. Sisca,* 245 Pa.Super. 125, 129–130, 369 A.2d 325, 327 (1976). See also: *Commonwealth v. Heck, supra* 517 Pa. at 200–201, 535 A.2d at 579–580; *Commonwealth v. Kaulback,* 256 Pa.Super. 13, 18, 389 A.2d 152, 154–155 (1978).

With respect to the issue of causation, the Superior Court has recently observed:

> Causation is an essential element of a charge of criminal homicide, which the Commonwealth must prove beyond a reasonable doubt. *Commonwealth v. Webb,* 449 Pa. 490, 494, 296 A.2d 734, 737 (1972). See also: *Commonwealth v. Kingsley,* 480 Pa. 560, 569–570, 391 A.2d 1027, 1032 (1978); *Commonwealth v. Cheatham,* [419] Pa.Super. [603, 607] 615 A.2d 802, 805 (1992). The tort concept of proximate cause plays no role in a prosecution for criminal homicide. Rather, the Commonwealth must prove a more direct causal relationship between the defendant's conduct and the victim's death. *Commonwealth v. Barnhart,* 345 Pa.Super. 10, 28, 497 A.2d 616, 626 (1985), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 34 (1988). See also: *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961); *Commonwealth v. Lang,* 285 Pa.Super. 34, 426 A.2d 691 (1981). However,

it has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. *Commonwealth v. Stafford,* 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Carn,* 449 Pa. 228, 296 A.2d 753 (1972); *Commonwealth v. Johnson,* 445 Pa. 276, 284 A.2d 734 (1971); *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A.2d 291 (1966); *Commonwealth ex rel. Peters v. Maroney,* 415 Pa. 553, 204 A.2d 459 (1964). Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result. *Commonwealth v. Stafford, supra.*

*Commonwealth v. Skufca,* 457 Pa. 124, 132–133, 321 A.2d 889, 894 (1974), *appeal dismissed,* 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974). See also: *Commonwealth v. Rementer,* 410 Pa.Super. 9, 19–24, 598 A.2d 1300, 1305–1307 (1991); *Commonwealth v. Youngkin,* 285 Pa.Super. 417, 424–425, 427 A.2d 1356, 1359–1360 (1981); *Commonwealth v. Howard,* 265 Pa.Super. 535, 539–540, 402 A.2d 674, 676–677 (1979). Thus, "[a] defendant cannot escape the natural consequences of his act merely because of foreseeable complications." *Commonwealth v. Paquette,* 451 Pa. 250, 254, 301 A.2d 837, 839 (1973). So long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found. See: *Commonwealth v. Hicks,* 466 Pa. 499, 505, 353 A.2d 803, 805 (1976). See also: *Commonwealth v. Massart,* 469 Pa. 572, 577, 366 A.2d 1229, 1232 (1975); *Commonwealth v. Stafford,* 451 Pa. 95, 100, 301 A.2d 600, 604 (1973); *Commonwealth v. Cheeks,* 423 Pa. 67, 73, 223 A.2d 291, 294 (1966).

*Commonwealth v. Shoup,* 423 Pa.Super. 12, 18–19, 620 A.2d 15, 18 (1993). See also: *Commonwealth v. Long,* 425 Pa.Super. 170, 174–178, 624 A.2d 200, 203–204 (1993); *Commonwealth v. Johnson,* 376 Pa.Super. 121, 129–130, 545 A.2d 349, 353 (1988); *Commonwealth v. Kostra,* 349 Pa.Super. 89, 93–94, 502 A.2d 1287, 1289 (1985).

■ After careful review, we are satisfied that the Commonwealth offered sufficient evidence to permit the trial court, as trier of the facts, to find that appellant's conduct was a direct and substantial factor in bringing about the death of Donna Hollis and in causing Lorainne Billie to sustain serious bodily injury. Viewed in the light most favorable to the Commonwealth, the evidence disclosed that prior to turning onto Ohio River Boulevard, appellant had been driving his vehicle at a high rate of speed and had ignored several stop signs. Upon entering Ohio River Boulevard he was observed traveling at approximately sixty miles per hour, when the speed limit was posted at forty miles per hour. He was then weaving between lanes in order to pass other vehicles. Upon approaching the intersection of Ohio River Boulevard with Meade Avenue, appellant switched lanes abruptly into the curb side lane in order to pass several vehicles which were waiting to make a left turn. His blood alcohol level at the time was more than twice the legal limit; and, following the accident, he appeared to be visibly intoxicated. The factfinder could also infer from the evidence that appellant's reflexes and judgment had been adversely affected by his intoxication. From the evidence, therefore, the trial court could properly find that appellant had acted recklessly, and in complete disregard for the safety of other persons on the road, by driving his vehicle in a reckless manner, while so intoxicated as to be incapable of driving safely. That appellant traveled through the intersection with a green traffic light and did make an attempt to stop his vehicle does not alter the fact that, by driving at excessive speeds and while intoxicated, his conduct started an unbroken chain of causation leading directly to the fatal accident.

■ The law is clear that a victim's contributory negligence, if any, is not a defense to a charge of vehicular homicide if the defendant's conduct was a direct and substantial factor in causing the accident. See: *In the Interest of Hyduke, supra* 371 Pa.Super. at 389 n. 6, 538 A.2d at 71 n. 6; *Commonwealth v. Heck,* 341 Pa.Super. 183, 213, 491 A.2d 212, 227 (1985), *aff'd,* 517 Pa. 192, 535 A.2d 575 (1987). See also: *Commonwealth v.*

*Long, supra* 425 Pa.Super. at 176–178, 624 A.2d at 204 (contributory negligence of victim not a defense in a criminal action). That the defendant's conduct was a direct cause, however, must be shown.

Here, there was ample evidence from which the factfinder could conclude that appellant's conduct was a direct and substantial factor in causing the accident which resulted in the death of Donna Hollis and the infliction of serious bodily injury to Lorainne Billie. Billie's operation of her vehicle, the trial court could find, was not a legal cause of the accident and did not relieve appellant from criminal responsibility for his own criminal conduct. Billie could lawfully make a turn into the gas station so long as she could do so safely. Her testimony was, and the trial court could find, that she had had a clear view of approaching traffic and that the curb lane had been clear when she began to make a left turn into the service station. Therefore, the trial court could find that appellant was criminally liable for causing the accident.

■ There is merit, however, to appellant's contention that for sentencing purposes his conviction for driving while under the influence of alcohol merged with his conviction for homicide by vehicle. See: *Commonwealth v. Welshans,* 397 Pa.Super. 439, 580 A.2d 379 (1990), *aff'd,* 529 Pa. 571, 605 A.2d 1222 (1992); *Commonwealth v. Voshall,* 387 Pa.Super. 47, 563 A.2d 936 (1989), *aff'd,* 529 Pa. 571, 605 A.2d 1222 (1992). The Commonwealth, with commendable candor, concedes that the separate sentence imposed upon appellant for driving while under the influence of alcohol was improper and should be vacated.

The sentence imposed for driving while under the influence of alcohol is vacated. In all other respects, the judgment of sentence is affirmed.