## Commonwealth v. Savage

C.P. of Lehigh County, No. CP-39-CR-2092-2014

*Richard Director*, for Commonwealth.
*Carol A. Marciano*, for defendant.

FORD, *J.*, Oct. 29, 2014—The charges filed against the defendant, Oliver Franklin Savage, in the criminal information are: Count 1, homicide by vehicle, 75

Pa.C.S. § 3732(a), Count 2, involuntary manslaughter, 18 Pa.C.S. § 2504(a), Count 3, recklessly endangering another person, 18 Pa.C.S. § 2705, Count 4, recklessly endangering another person, 18 Pa.C.S. § 2705, Count 5, careless driving, 75 Pa.C.S. § 3714(b), Count 6, driving at safe speed, 75 Pa.C.S. § 3361, Count 7, following too closely, 75 Pa.C.S. § 3310(a), and Count 8, reckless driving, 75 Pa.C.S. § 3736(a). All charges stem from a vehicular accident on February 10, 2014, in which James Knappenberger was killed.

On July 28, 2014, defense counsel filed an omnibus pre-trial motion which contains several sections. I conducted a hearing on the motion on September 4, 2014. At the hearing, defense counsel withdrew without prejudice Sections II and III of the motion, entitled respectively "motion to suppress information obtained from GPS" and "motion to suppress information obtained from warrantless inspection of defendant's logbook, travel-related documents, medical card and prescription bottles." In the final section of the motion, defense counsel asks that she be permitted to file additional motions and to modify motions already filed. She has not pursued this so I dismiss this last section of the motion with today's order. At the September 4 hearing, the defense pursued two sections of the omnibus motion, namely, Section I, a petition to dismiss the felony and misdemeanor charges and Section IV, a petition to preclude the use of defendant's statement to police because of the Commonwealth's alleged inability to comply with the *corpus delicti* rule.

In an effort to establish a *prima facie* case, the Commonwealth presented the transcript of the testimony from the preliminary hearing (C-5), accident photos (C-1 through C-4), a map of the accident location (C-6), and a

diagram of the accident scene (C-7). The Commonwealth also presented the testimony of Sergeant Cory Reader of the Upper Macungie Township Police Department and the testimony of Sergeant William Easparr of the same department. Sergeant Reader investigated the accident. Based upon extensive training and experience, he rendered expert testimony about the dynamics and cause of the accident. Sergeant Easparr testified about a statement that the defendant made to him at the scene following the accident.

After consideration of the evidence and applicable law, the court concludes that the Commonwealth has not established a *prima facie* case as to the felony and misdemeanor charges, Counts 1 through 4, so they are dismissed through today's order. Defendant's *corpus delicti* motion is also denied.

What follows is a summary of the evidence for the purposes of this motion. This evidence was presented exclusively by the Commonwealth in its attempt to establish a *prima facie* case. The evidence is uncontroverted. Each attorney summarized the evidence accurately in their excellent briefs.

## Statement of Facts

Shortly after 9:00 a.m. on February 10, 2014, the defendant was operating a white Freightliner truck tractor with an enclosed trailer traveling northbound (which was actually in an easterly direction) on Route 222 approaching the intersection of Hamilton Boulevard with Newtown Road and Breinigsville Road in Upper Macungie Township, Lehigh County. The day was clear with no precipitation. The roadway was dry with some wet spots. There was plowed snow off the roadway

beyond the fog line. For a motorist traveling northbound for a considerable distance on Route 222 before entering this intersection as defendant was, he would pass through the village of Maxatawny where the posted speed limit is 35 miles per hour. After traveling through that village, there is a posted speed limit of 55 miles per hour which posting is the final one before the motorist would arrive at this intersection. For the same motor vehicle operator traveling northbound, he would first see this intersection from approximately three-tenths of a mile before arriving at it. In the truck tractor that defendant operated, he sat higher than a person who operates a passenger vehicle.

As defendant drove his tractor trailer toward the intersection, vehicles in front of him were stopped or slowing because of the operational traffic signal at the intersection. The last vehicle in line of the slowing or stopped vehicles was a white Dodge Caravan operated by Mr. Knappenberger. As the truck and the Caravan approached the intersection, there were no vehicles between the truck and the Caravan.

Defendant had his truck in ninth gear in a ten-gear transmission. This is one gear short of over-drive. As Sergeant Reader explained, "In your passenger car, essentially it would be having it in the D with a circle around it like you were traveling on the highway.... It would be a gear selected generally if you were not intending to slow down or change speed." C-5, p. 17.

Defendant failed to recognize in time that the vehicles in front of him, including Mr. Knappenberger's, were either stopped or slowing. As a result, he failed to maintain control of his own vehicle. The data from the truck's engine module control (EMC), which was retrieved later,

indicated that defendant applied the brakes on the truck in what was described as abnormal or hard or panic braking. Immediately prior to reaching Mr. Knappenberger's Caravan, defendant turned his truck to the right. Despite these attempts at evasion, the front of his vehicle on the driver's side struck the rear passenger corner on the Caravan. The force and angle of that collision forced the Caravan across the middle lane and into the oncoming or southbound (westerly direction) lane of Route 222. Just at that moment, a separate tractor trailer was traveling in the oncoming lane. It was struck by the Caravan under the driver's side door in the area of the fuel tank which is on that truck's driver's side.

These were Sergeant Reader's expert conclusions:

Based on everything we observed at the scene, the damage to the vehicles, the data that was gathered from the ECM module, I believe Mr. Savage was traveling down the roadway; gear selection indicates he was traveling with open space in front of him prior to getting to that intersection; and did not recognize that the open space was closing rapidly because there was vehicles stopped in front of him. As I testified, there were several other cars that pulled off. Those vehicles were forward of that Dodge van that day. They were indicative of the traffic signal that was either red or just changed to green or some sort of interaction where all those cars were stopped forward of Mr. Savage's vehicle. He failed to recognize either enough to bring his vehicle to a stop or at least slow it to a point to keep control of it until those cars started to proceed away from him or forward of him. Those steps, pre-crash, contributed and caused the crash that is depicted in

those pictures. Again, the panicked braking and offset or steering to the right, as we talked about, struck the van and pushed it into the oncoming lane.

C-5, pp. 28-29.

Following the accident, the police determined that a brake on defendant's truck was out of adjustment. There was no proof nor was there an argument that this contributed to the accident. The investigation did not reveal any other mechanical problems with the tractor trailer. The precise speed at which the defendant was operating his truck immediately before his hard braking or at the point of impact is unknown. Sergeant Reader believed that it would be "unfair and not accurate" to render an opinion on the speed of defendant's truck at impact based on the data available to him. He offered a range of speed between 30 and 52 miles per hour with his estimation that defendant traveled 40 miles per hour at impact. C-5, pp. 38-40.

There was no evidence that defendant was using a cell phone or any other extraneous device at the points of braking or impact. Defendant was tested for the presence of alcohol which yielded negative results.

At the direction of the police, the defendant remained seated in the truck cab following the accident. Sergeant Easparr spoke with the defendant while he was seated in the driver's seat. The defendant told the sergeant that the accident was his fault. When the sergeant asked him to explain what happened, the defendant stated he was traveling northbound on Route 222. He noticed that there was a line of traffic stopped in front of him, but it was too late. He tried to apply the hard brake on a wet roadway, but the vehicle was not stopping. He swerved to the right

but his truck collided with the passenger side rear of the Caravan which was the last vehicle in line of the stopped vehicles. That propelled the Caravan into the southbound lane of travel where the other tractor trailer struck the minivan and pushed it back in the other direction while the southbound tractor trailer went down the embankment.

## Discussion and Conclusions of Law

The defense is challenging the sufficiency of the Commonwealth's evidence on the felony and misdemeanor charges. The defense does this through its motion for writ of habeas corpus contained within the omnibus pre-trial motion. This is the appropriate procedural means for the pre-trial challenge to the sufficiency of the evidence. *Commonwealth v. Huggins*, 575 Pa. 395, 399 n.2, 836 A.2d 862, 864 n.2 (2003).

At the pre-trial stage, the Commonwealth does not have to prove the defendant's guilt beyond a reasonable doubt. Rather, the Commonwealth's burden is to present a *prima facie* case of the defendant's guilt. *Id.* at 402, 836 A.2d at 866 (citation omitted). "A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Id.* (citation omitted). In determining if a *prima facie* case has been established, the Commonwealth is entitled to reasonable inferences and the evidence must be read in the light most favorable to the Commonwealth's case. *Id.* (citation omitted).

In the present case, for purposes of whether the Commonwealth has presented sufficient evidence, there is no dispute that Mr. Knappenberger died as a result of the defendant's conduct in driving the tractor trailer. The

primary issue is whether the mens rea elements of homicide by vehicle, involuntary manslaughter and recklessly endangering another person have been established by the evidence.

The statutory definition of Count 1, homicide by vehicle, in pertinent part, is: "Any person who recklessly or who with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth...applying to the operation or use of a vehicle or to the regulation of traffic...is guilty of homicide by vehicle, a felony of third degree, when the violation is the cause of death." 75 Pa.C.S. § 3732(a). Thus, the *mens rea* requirement in this statute that the Commonwealth must prove is that the defendant drove his vehicle "recklessly or with gross negligence."

The statutory definition of Count 2, involuntary manslaughter, is: "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S. § 2504(a).

The appellate courts have construed the terms "reckless" and "grossly negligent" as defining the equivalent state of mind for purposes of these statutes. The same words are used in the statutes to set forth the *mens rea* elements for these crimes. *See Commonwealth v. Colmer*, 552 Pa. 527, 534, 716 A.2d 593, 597 (1998); and *Commonwealth v. Grimes*, 842 A.2d 432, 434 (Pa. Super. 2004).

The definition of the offenses charged in Counts 3 and 4, recklessly endangering another person, is found at 18 Pa.C.S. § 2705 which reads: "A person commits a

misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. The *mens rea* of recklessness is evident from this definition.

In that recklessness is the *mens rea* which the Commonwealth must demonstrate to proceed to trial on Counts 1 through 4, I examine what constitutes recklessness. It is defined in the general culpability section of the Pennsylvania Crimes Code in these words:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3). In order to consciously disregard a substantial and unjustifiable risk, one must be aware of the risk and choose to proceed in spite of it. *Commonwealth v. Huggins*, 575 Pa. at 400, 836 A.2d at 865.

May the court consider the statement defendant made to police following the accident? Defendant argues that I am precluded from considering the statement based on the *corpus delicti* rule.

"The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting

him to the crime can be admitted." *Commonwealth v. Hernandez*, 39 A.3d 406, 410 (Pa. Super. 2012) (quoting *Commonwealth v. Young*, 904 A.2d 947, 956 (Pa. Super. 2006)). The Commonwealth must demonstrate the *corpus delicti* by a preponderance of the evidence. *Commonwealth v. Hernandez*, 39 A.3d at 411. In meeting this burden, the Commonwealth can rely on circumstantial evidence. *Commonwealth v. Rivera*, 828 A.2d 1094, 1103-1104 (Pa. Super. 2003) (citation omitted). Further, the Commonwealth does not have to prove that the alleged criminal act could not have been caused by accident. *Commonwealth v. Byrd*, 490 Pa. 544, 556, 417 A.2d 173, 179 (1980).

The court accepts the Commonwealth's "closely related crime" argument to the extent that it has presented a *prima facie* case for the summary offenses charged in Counts 5, 6 and 7. These offenses are sufficiently related to the felony and misdemeanor counts to permit introduction of defendant's statement on Counts 1 through 4. (The Commonwealth has not shown recklessness required for Count 8. There is no motion before the court regarding this count.) I also believe that the *corpus delicti* rule is applicable to the admission of evidence at trial only. Therefore, I deny defendant's motion to preclude consideration of his statement. I consider it in making the determination of whether there is a showing that defendant acted with recklessness on the felony and misdemeanor counts.

The question to be answered on the *mens rea* issue for Counts 1 through 4 is whether the Commonwealth produced *prima facie* evidence that defendant, in operating the tractor trailer in the circumstances that preceded the collision that resulted in the death of Mr. Knappenberger,

disregarded a substantial and unjustifiable risk that the direct result of his behavior would be the death of Mr. Knappenberger. *See Commonwealth v. Huggins*, 575 Pa. at 407, 836 A.2d at 869 (posing this question in a factually similar case).

I have considered the many explanations of recklessness found in the appellate decisions counsel have cited. I have examined the circumstances in which these courts have and have not found recklessness. The cases were instructive. After consideration of these cases, the applicable statutes and the present facts, I conclude that the Commonwealth has not made a *prima facie* showing that the defendant acted with recklessness.

Defendant did not notice the stopped or slowing vehicle of Mr. Knappenberger in front of him and could not stop his tractor trailer before it crashed into the Knappenberger vehicle. There is no evidence that defendant was struggling to stay awake, that he was intoxicated, that he was using a cell phone or engaging in any other activity that would have distracted his view of the roadway. There is no showing that defendant was speeding or driving erratically. There is no evidence even inferring that defendant consciously disregarded a known risk when he collided with Mr. Knappenberger's vehicle. Defendant's statement to police that the accident was his fault does not change the analysis. It only confirms the known physical facts the police presented to the court.

As tragic as the accident was, under our law, "not every violation of the law or unlawful act committed while operating a motor vehicle will render the driver criminally liable for a death resulting from an accident in which the vehicle was involved." *Commonwealth v. Nicotra*, 425

Pa. Super. 600, 608, 625 A.2d 1259, 1263 (1993) (quoting *Commonwealth v. Sisca*, 245 Pa. Super. 125, 129-30, 369 A.2d 325, 327 (1976)) (though *Nicotra* was decided prior to the amendment of the homicide by vehicle statute in 2000, the cited legal principle is equally applicable under the current law). The driver's conduct must be reckless.

Because the Commonwealth has not made a *prima facie* showing that defendant acted with recklessness, the charges of homicide by vehicle, involuntary manslaughter and recklessly endangering another person must be dismissed. Therefore, Counts 1, 2, 3 and 4 are stricken from the criminal information.