460 A.2d 328

**COMMONWEALTH of Pennsylvania**

v.

**William WELLS a/k/a James Nelson, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 7, 1983.

Filed May 13, 1983.

Petition for Allowance of Appeal Denied Sept. 14, 1983.

558

Robert F. Pappano, Assistant Public Defender, Media, for appellant.

A. Sheldon Kovach, Assistant District Attorney, Media, for Commonwealth, appellee.

Before SPAETH, BECK and JOHNSON, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for robbery, criminal conspiracy, and prohibited offensive weapons. Appellant was convicted of several other offenses, but since these merged with the robbery, no separate sentence for any of them was imposed. One of these several other offenses was unlawful restraint. Appellant argues that he is entitled to a new trial because the lower court in its

charge improperly defined the offense of unlawful restraint.[1] However, we find no error, and therefore affirm.

In the course of committing a robbery, appellant, using a sawed-off shotgun, forced restaurant employees to open a safe, lie on the floor, and unlock a back door for his escape. The incident lasted about ten minutes. N.T. 3/4/81 at 7.

The offense of unlawful restraint is defined as follows: A person commits a misdemeanor of the first degree if he knowingly:

(1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury; or

(2) holds another in a condition of involuntary servitude.

18 Pa.C.S.A. § 2902 (1981 Supp.).

Appellant argues[2] that the lower court improperly charged the jury on the meaning of "involuntary servitude" within § 2902(2). The charge was that

the defendant has been charged with unlawful restraint in this manner [*sic;* matter?] as well and in order to find the defendant guilty of that crime you must be satisfied beyond a reasonable doubt that the following two elements have been established by the Commonwealth: First, that the defendant held either Mr. Sulik or Mr. Coen in a condition of involuntary servitude, that is held one of those individuals subject to a will other than that individual's, that is allowing Mr. Sulik or Mr. Coen, depending on whose case you're considering, and not allowing him to decide what to do or what not to do, in other

---

**1.** Appellant also argues that the lower court erred in refusing to suppress two identifications and in permitting testimony regarding the content of police radio broadcasts. The opinion of the lower court adequately disposes of these issues.

**2.** The lower court states in its opinion that appellant's post-verdict motions were denied. Slip op. at 2. We have examined the record and have been unable to find appellant's post-verdict motions or any evidence that they were ever filed. However, the Commonwealth does not argue waiver and we have decided that the better course is to assume that the motions have been lost and to end the controversy by deciding it on the merits.

words, the freedom of choice and requiring, on the contrary, that person to do something which is laying [*sic*] on the floor or opening the door contrary to the exercise of his free will, in other words, not giving that person, Mr. Sulik or Mr. Coen, the opportunity to voluntarily freely decide for himself whether or not they choose to do one of these two things, lay [*sic*] on the floor or open the door as the case suggests to you and, of course, when I say do one of those two things, who is going to decide what was done or what was not done? You, ladies and gentlemen, are because you're the judges of the facts and you have to determine what happened.

So, the first element of this offense is that the defendant had the victim in a condition of involuntary servitude and the second element is that the defendant knowingly held that victim in a condition of involuntary servitude. I've already defined what knowing conduct is and, therefore, I won't repeat it for you at this time.

N.T. 4/29/81 at 79–80.

Appellant argues that "involuntary servitude" "means slavery or bondage," Brief for Appellant at 13, and should not be construed to include "order[ing] [a person] to commit an act against his will pursuant to a robbery," *id.* "Otherwise, every robbery would involve a charge of unlawful restraint whenever the victim is ordered to hand over his money." *Id.*

We have discovered no case construing the meaning of "involuntary servitude" as used in the definition of the offense of unlawful restraint.[3] We believe, however, that the meaning becomes clear when the phrase is taken in the context of the Crimes Code.

■ In the Crimes Code, the offense of unlawful restraint, 18 Pa.C.S.A. § 2902, falls between the offense of kidnapping, *id.* § 2901, and the offense of false imprison-

---

**3.** A dictionary definition is: *"Involuntary Servitude.* The condition of one who is compelled by force, coercion, or imprisonment, and against his will, to labor for another, whether he is paid or not." Black's Law Dict. at 743 (5th Ed.1979).

ment, *id.* § 2903.[4]  Kidnapping requires that a person re-move another a *"substantial distance* [ ] from the place where he is found," or confine another "for a *substantial period* in a place of isolation ...." *Id.* § 2901 (emphasis added).  False imprisonment requires that one "knowingly restrain [ ] another unlawfully so as to interfere *substantially* with his liberty." *Id.* § 2903 (emphasis added).  Un-lawful restraint has no similar requirement; it suffices merely to "hold [ ] another in a condition of involuntary servitude." *Id.* § 2902(2).

■  It is therefore clear that "involuntary servitude" has no time dimension.  Holding another in a condition of slavery would represent holding him in a condition of pro-longed involuntary servitude.  But that is not the only sort of involuntary servitude the legislature had in mind.  For if that were the only sort it had in mind, it would have said so, just as in defining kidnapping it required proof of a "sub-stantial distance" or "substantial period," and in false im-prisonment, of "substantial[ ]" interference with liberty.

■  Once one realizes that "involuntary servitude" has no time dimension—that *any* involuntary servitude, from brief to prolonged, may represent unlawful restraint—it becomes apparent that the lower court's charge was cor-rect.  The court told the jury that the Commonwealth had to prove that in lying on the floor or in opening the door to enable appellant to escape, Mr. Sulik or Mr. Coen had not acted freely, but, rather, as individuals whom appellant had deprived of freedom of choice and had subjected to his will.  Such individuals may fairly enough be characterized as "in a condition of involuntary servitude."  Slaves, if you will, for a brief period.

Affirmed.

---

**4.**  *See* Toll, Pa. Crimes Code Ann. § 2902 at 343: "This section estab-lishes a crime between kidnapping and false imprisonment.  It is intended to cover restraints which do not reach the magnitude of kidnapping but are somewhat more serious than mere false imprison-ment."