**COMMONWEALTH of Pennsylvania**

v.

**Andre Ledon PRINCE, Appellant.**

Superior Court of Pennsylvania.

Argued June 2, 1998.

Filed Nov. 12, 1998.

---

Kirk J. Henderson, Asst. Public Defender, for appellant.

Andrew G. Thiros, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before FORD ELLIOTT, EAKIN and BECK, JJ.

FORD ELLIOTT, Judge:

Following a jury trial, appellant was found guilty of one count of sexual assault and one count of unlawful restraint.[1] He was sentenced to two and one-half to ten years' incarceration on the sexual assault charge, with no additional sentence for unlawful restraint. This appeal followed. We remand for an evidentiary hearing.

Appellant raises the following issues:

I. Did the Commonwealth prove lack of consent for sexual intercourse when the alleged victim's actions indicated that she consented?

II. Does effective counsel request a consent-as-a-defense instruction when the only defense offered was that the alleged victim consented to the sexual intercourse?

III. When a supposed victim fails to report a sexual assault at the first possible opportunity, does counsel offer

1. 18 Pa.C.S.A. §§ 3124.1 and 2902, respectively.

effective representation by failing to request a prompt-complaint instruction?

IV. Is a person guilty of unlawful restraint when another agrees to have sex with him and then spends the night despite numerous opportunities to leave, especially after the defendant has fallen asleep?

Appellant's brief at 3.

The recently enacted crime of sexual assault provides:

§ 3124.1. Sexual assault

Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1. Sexual assault carries an offense gravity score of 11, the same as aggravated assault and voluntary manslaughter. 42 Pa.C.S.A. § 9721, 204 Pa.Code § 303.15. According to the Act's legislative history, it was drafted in response to our supreme court's decision in *Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161 (1994), and was intended to fill the loophole left by the rape and involuntary deviate sexual intercourse statutes, 18 Pa.C.S.A. §§ 3121 and 3123, respectively, by criminalizing nonconsensual sex where the perpetrator employs little if any force. Sen. Legislative Journal No. 4, January 31, 1995, First Special Session of 1995 at 20–25 (Pa.1995).

The unlawful restraint statute provides in relevant part:

§ 2902. Unlawful restraint

A person commits a misdemeanor of the first degree if he knowingly:

. . . .

(2) holds another in a condition of involuntary servitude.

18 Pa.C.S.A. § 2902. It was intended to cover restraints which do not reach the magnitude of kidnapping but are somewhat more

serious than mere false imprisonment. 18 Pa.C.S.A. § 2902, Official Comment—1972. We must therefore measure the sufficiency of the evidence against these statutory provisions.

■ In evaluating a challenge to the sufficiency of the evidence, we are to view all of the evidence admitted at trial in the light most favorable to the verdict winner, along with any reasonable inferences to be drawn therefrom. We must then determine whether the evidence was sufficient to have permitted the trier of fact to find that the Commonwealth established each and every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Nicotra,* 425 Pa.Super. 600,, 625 A.2d 1259, 1261 (1993). The facts and circumstances presented at trial need not preclude every possibility of innocence. *Id.* Viewed in the light most favorable to the Commonwealth as verdict winner, we set forth the relevant facts, taken from the trial court's opinion and supported by the record:

In the summer of 1996, the victim, Andrella Prince, and her eight year old daughter Erin, resided with Prince's sister, Elizabeth Long, at 314 Mayfield Avenue, in the North Side of Pittsburgh. (T–34,50) Ms. Prince had known the defendant since high school. (T–34) They were married in 1994, but separated five months later. In 1995, they were divorced. (T–35)

The defendant had been living in Georgia but returned to Pittsburgh shortly before the incident in question. (T–36) Upon arriving in Pittsburgh the defendant called and came over to see Ms. Prince. (T–37) Both her sister and daughter were there. (T–38) Twice during the course of that visit the defendant attempted to become intimate with his former wife, but she refused.[2] (T–41;42–45) Eventually, the defendant left.

A few days later, the defendant came over and he and Prince went for a walk around the neighborhood. (T–46) He wanted Prince to hold his hand so that everyone would know she was with him. A friend drove by and Prince tried to talk to him, but the car did not stop. (T–48) A second friend drove by and the defendant said that if she had stopped and gone over to the car, he would have 'smacked her.' (T–48,49)

On August 4, 1996, between 11:00 P.M. and midnight, the defendant came over to the house. (T–50,92) Prince's daughter, Erin, was in the house, but her sister was out of town. (T–50,121) The defendant appeared intoxicated. His eyes were red and glassy, he was very loud and smelled like liquor. (T–51) The defendant said, 'Come give me a kiss', and Prince said, 'No.' The defendant said, 'You know you want to give me a kiss,' and Prince repeated, 'No, I don't.' The defendant came over to Prince and pulled her off the chair to give him a kiss. Prince gave him a peck, to pacify him, and sat back down. (T–52) It was Erin's bedtime, and the defendant told her to go upstairs. (T–52,53) But she returned shortly thereafter and hid on the steps. (T–54)

The defendant told Prince that he wanted to have sex with her and began pulling on her clothes. (T–53) He pulled out his penis, tried rubbing it against her leg and said, 'You know you want me.' (T–53,54) Prince tried to push him away. (T–54) The defendant kept trying to pull her shorts and underwear down. (T–55,56) She kept pulling them back up and asked him to stop. (T–55) Finally, the defendant put his foot between her legs so she could not pull them back up. Prince realized that he was going to force her to have sex and became frightened. (T–56) She was afraid to scream or do anything because there was nobody there to help her and the defendant becomes violent when he drinks and/or does not get what he wants. (T–59,107,131) Fearing AIDS and venereal disease she said to defendant, 'if you're going to have sex with me you can use a condom because I don't want to catch no diseases.' (T–57,58) The defendant al-

---

**2.** Ms. Prince did invite appellant to her bedroom where they engaged in smoking marijuana, kissing, hugging, and bumping and grinding against each other until appellant became sexually aroused. Ms. Prince then told him she was "on her period" when he requested sexual intercourse. (Notes of testimony, 1/22–24/97 at 42–43.)

lowed her to get a condom. When she returned, he started biting her between her legs. (T–58) He then took her shorts off and performed oral sex on her. Prince was unable to prevent the defendant from penetrating her. (T–59) The defendant told her to get on top of him and 'ride him.' When she refused, the defendant rolled over, pulled her on top of him, held her shoulders down and had sex with her. Prince kept yelling, 'Stop, Andre. You're hurting me.' (T–60) Her yelling was heard by her next door neighbor. (T–132,134,136) The defendant responded, 'You're all right. I ain't hurting you. You know it feels good. You know you like this. It feels good to me; it feels good to you.' Every time Prince tried to get up, the defendant pulled her closer. Finally, the defendant flipped her over on her back and ejaculated. Prince was bleeding. (T–60) She asked the defendant to leave, but he refused. He told her to lay down beside him and that she had 'better be there' when he got up in the morning. (T–62) The next morning defendant left the house. After speaking with a friend about what had happened, she telephoned defendant and said, 'Do you realize what you did to me? You hurt me. Didn't I tell you "no?"' Defendant's response was, 'Yes, you told me "no," but you ain't mean it.' When she told the defendant that she was going to call the police he told her that if she did, she 'wouldn't be able to walk around Pittsburgh again.' (T–64)

Trial court opinion, 10/03/97 at 2–5.

From the foregoing, we find sufficient evidence to support the jury's finding of guilt as to sexual assault/sexual intercourse and unlawful restraint. If the jury believed Ms. Prince's version of events, it could have found that she did not consent to sexual intercourse, and she stayed near appellant all night out of fear for her safety. (Notes of testimony, 1/22–24/97 at 131). *See Commonwealth v. Dehoniesto*, 425 Pa.Super. 83, n. 10, 624 A.2d 156, 161 n. 10 (1993) (simply holding an individual subject to the will of another

was sufficient to establish unlawful restraint), *appeal denied*, 535 Pa. 654, 634 A.2d 217 (1993), citing *Commonwealth v. Wells*, 313 Pa.Super. 557, 460 A.2d 328 (1983).

We find additional support for the jury's verdict in the apparent thoughtfulness with which it evaluated the various charges against appellant. Appellant was charged with rape, involuntary deviate sexual intercourse, simple assault, sexual assault/sexual intercourse, sexual assault/deviate sexual intercourse, and unlawful restraint.[3] The jury found appellant not guilty of rape, involuntary deviate sexual intercourse, simple assault, and sexual assault/deviate sexual intercourse. (Notes of testimony 1/22–24/97 at 243.) The verdict of not guilty as to this last count indicates that the jury carefully weighed the evidence, and found insufficient evidence that Ms. Prince did not consent to deviate sexual intercourse, but sufficient evidence that she did not consent to sexual intercourse.[4]

This brings us to appellant's claim that trial counsel was ineffective for failing to request a jury charge as to consent as a defense, and as to prompt complaint. In order to succeed on an ineffectiveness of counsel claim, "Appellant must establish that the underlying claim is of arguable merit, counsel's course of action lacked any reasonable basis for advancing his client's interests, and Appellant has suffered prejudice as a result." *Commonwealth v. Griffin*, 537 Pa. 447,, 644 A.2d 1167, 1172 (1994), *appeal denied*, 541 Pa. 635, 663 A.2d 687 (1995) (citations omitted). We presume counsel is effective and place upon appellant the burden of proving otherwise. *Id.* at 456–57, 644 A.2d at 1172. Furthermore, an allegation of ineffectiveness cannot be established without a finding of prejudice. *Commonwealth v. March*, 528 Pa. 412,, 598 A.2d 961, 963 (1991). In this regard, appellant bears the burden of proving that, absent counsel's ineffectiveness, the result would have been different. *Commonwealth v. Howard*, 538 Pa. 86,, 645 A.2d

3. 18 Pa.C.S.A. §§ 3121, 3123, 2701, 3124.1 and 2902, respectively.

4. Appellant never claimed they did not engage in oral sex; rather, his only claim was that Ms. Prince requested it. (Notes of testimony, 1/22–24/97 at 172.)

1300, 1305 (1994). With these standards in mind, we turn to the jury charges at issue in this case.

■ The Consent as a Defense Suggested Standard Jury Instruction ("SSJI") is based upon § 311 of the Crimes Code, which in turn is based upon § 2.11 of the Model Penal Code. Pa. SSJI (Crim) 8.311B, Subcommittee Note. According to appellant, that instruction, tailored to fit the facts of this case, should have provided:

8.311B (Crim) CONSENT AS A DEFENSE

(1) The consent of the victim is a defense to a charge of rape, involuntary deviate sexual intercourse, and sexual assault. Consent is present if the victim at the time of the alleged crime is willing to engage in these activities and makes her willingness known to the defendant by words or behavior.

. . . .

(4) The burden is on the Commonwealth to prove beyond reasonable doubt that the alleged victim did not give consent. Thus you cannot convict the defendant unless you are satisfied beyond a reasonable doubt that Andrella Prince did not give consent.

Appellant's brief at 21–22, citing Pa. SSJI (Crim) 8.311B.

We agree with appellant that his claim that counsel should have requested this instruction has arguable merit: clearly, such a charge would have been appropriate in this case. Additionally, neither the record before us nor our independent analysis yields any strategic reason for foregoing the charge under the facts of this case. We recognize that appellant avers counsel should have requested a charge only as to subsections (1) and (4) of SSJI 8.11B; however, the Commonwealth counters that it would then have requested a charge as to subsection (3). (Appellant's brief at 21–22; Commonwealth brief at 23–24.) Subsection (3) provides:

(3) The consent of the victim is not legally effective and is not a defense if it is induced by (force) (force which ___) (duress) (duress which ___) (deception) (deception which ___).

Pa. SSJI (Crim) 8.311B(3). Adding subsection 3 to the charge would have required the court to modify subsection (4) as follows:

(4) The burden is on the Commonwealth to prove beyond reasonable doubt that the alleged victim did not give a legally effective consent. Thus you cannot convict the defendant unless you are satisfied beyond reasonable doubt that either Andrella Prince did not give consent, or if she did give consent, that her consent was not legally effective.

Pa. SSJI (Crim) 8.311B(4) as modified to fit the facts of this case.

According to the Commonwealth, this "consent under duress" charge would have been harmful to appellant's defense. (*Id.* at 24.) Nevertheless, we conclude that the jury was well aware of Ms. Prince's claim that she submitted to appellant under duress. As a result, a charge as to subsection (3) would not have been overly harmful. Furthermore, even if harmful, we find that any harm suffered by a charge as to subsection (3) would have been more than outweighed by the benefit of a charge as to subsection (4). Our reasons follow.

The crime of sexual assault requires the Commonwealth to prove beyond a reasonable doubt that the defendant engaged in sexual intercourse or deviate sexual intercourse with the complainant, *and that the complainant did not consent.* 18 Pa.C.S.A. § 3124.1 (emphasis added). In other words, lack of consent is an element of the crime charged. While a defendant may assert consent as a defense, nevertheless, where lack of consent is an element of the crime, the defendant does not bear the burden of proving consent: *the Commonwealth bears the burden of proving lack of consent, beyond a reasonable doubt.* This was obviously a close case on the issue of consent as the jury's verdict, set forth *supra*, indicates. It was therefore imperative that the jury be instructed clearly and definitively as to where the burden lay on the issue of consent.

As we have already noted, sexual assault is a felony of the second degree, carrying with it an offense gravity score of 11 and a minimum sentence of 36 months. 42 Pa.C.S.A.

§ 9721. Lack of consent is all that criminalizes the acts at issue, in situations in which the only evidence often will be the conflicting testimony of the parties who engaged in the acts. We can imagine no situation in which a focused, cogent charge, emphasizing where and to what degree the burden of proof lies and what evidence may be considered, is more critical to a determination of guilt or innocence.

We recognize that after setting forth the elements of the crime of sexual assault, the trial court did charge the jury that the Commonwealth bore the burden of proving each element beyond a reasonable doubt. (Notes of testimony, 1/22–24/97 at 225.) The court also charged the jury that it was not appellant's burden to prove his innocence, but rather the Commonwealth's burden to prove his guilt as to each element of all of the crimes charged beyond a reasonable doubt. (*Id.* at 228–229.) Nevertheless, we find that appellant was entitled to a focused charge on consent, also emphasizing specifically where the burden lay. Because trial counsel failed to request such a charge and the trial court did not give it, we find it necessary to remand for an evidentiary hearing. We agree with the Commonwealth that the verdict indicates that the jury painstakingly sifted through the elements of the crimes; however, we cannot feel certain that the contested jury charge could not have made a difference.

■ We do not, however, find merit to appellant's claim that counsel was ineffective for failing to request the prompt complaint instruction because our review of the testimony indicates that Ms. Prince did promptly complain. It is true that Ms. Prince did not contact the police until the evening following the incident in question. Nevertheless, on the morning after the incident, as soon as appellant departed her friend's vehicle,[5] Ms. Prince asked her friend, "If you tell a person you don't want to have sex with them is that considered rape?" (Notes of testimony, 1/22–24/97 at 64.) When she returned home from work around 2:30 or 3:00, Ms. Prince called appellant, who told her that if she

called the police, she would never walk around Pittsburgh again. (*Id.*) Ms. Prince then called a neighbor, who urged her to call Pittsburgh Action Against Rape ("PAAR"). One of their staff took Ms. Prince to the hospital and contacted the police, who came there. (*Id.* at 65.)

We thus find this case distinguishable from *Commonwealth v. Jones,* 449 Pa.Super. 58, 672 A.2d 1353 (1996), relied upon by appellant, in which the victim did not mention anything to anyone until nearly 24 hours after the incident, and then only after Jones had taken some of the victim's personal documents and threatened not to return them unless she gave him money. *Id.* at 69, 672 A.2d at 1358. The purpose of the "prompt complaint" instruction is to allow the jury to draw a negative inference as to a complainant's credibility from the fact that she did not immediately complain, under the assumption that victims of violent assaults would complain of the assault at the first available opportunity. *Id.* at 64, 672 A.2d at 1356, quoting *Commonwealth v. Snoke,* 525 Pa. 295, 300, 580 A.2d 295, 297 (1990). In this case, Ms. Prince did complain—first to her friend and then to the PAAR—at the first available opportunity; therefore we find no merit to appellant's claim.

Because we find merit to appellant's claim that trial counsel should have requested a jury charge on consent as a defense, we are constrained to remand for an evidentiary hearing on that issue.

Judgment of sentence is otherwise affirmed, and case is remanded for an evidentiary hearing on ineffectiveness. If the trial court finds that counsel had no reasonable basis for failing to request a charge on consent, it should grant a new trial. Jurisdiction is relinquished.

EAKIN, J., files a Concurring and Dissenting Opinion.

EAKIN, Judge, concurring and dissenting:

I agree there is no merit to the claim counsel was ineffective for failing to request a prompt complaint instruction.

---

5. Ms. Prince referred to this gentleman as her uncle, although he was actually a friend. He gave her a ride to work in the morning, and also gave appellant a ride to the bus stop.

I believe the court's charge on the elements of the crime was more than sufficient, and quite clear on the Commonwealth's unfailing burden of proof on the element of consent... I see no basis to suggest the accused is entitled to a "focused charge" on any particular element of a crime. Where a charge is legally sufficient, we should not be vacating verdicts because "it could have been better." Hence I am constrained to dissent from that portion of the majority which remands.