J-S64006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUSTIN T. STACKHOUSE | |
| Appellant | No. 52 WDA 2014 |

Appeal from the PCRA Order December 20, 2013
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0000959-2011

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 25, 2014**

Justin T. Stackhouse appeals from the order of the Court of Common Pleas of Butler County, which denied his petition brought pursuant to the Post-Conviction Relief Act ("PCRA").[1]  After careful review, we affirm.

On direct appeal of Stackhouse's judgment of sentence, this Court affirmed the trial court and summarized the facts of this case as follows:

> The Pennsylvania State Police had received information that [Stackhouse] and several other individuals had been purchasing large amounts of pseudoephedrine at various pharmacies.  After investigating the matter, members of the Pennsylvania State Police went to [Stackhouse's] residence at 132 Cherry Valley Road in Butler County to conduct what they termed a "knock and talk" on May 20, 2011.  They wanted to speak with the occupants of the residence about suspected manufacturing of methamphetamine and [Stackhouse's] outstanding warrants from Florida.

_____

[1] 42 Pa.C.S. §§ 9541-9546.

The officers proceeded to walk up the driveway to the house where they observed two fans located in the basement stairwell pointing outward acting as a form of an exhaust system. As the troopers continued to the backdoor, they saw a burnt "blister pack," which is packaging for pseudoephedrine, and a piece of surgical tubing near the steps leading to the back porch. The troopers believed these items were all indicia of a methamphetamine lab.

When the officers knocked on the door, [Stackhouse's] girlfriend, Robyn Tuttle ("Tuttle"), answered. The troopers, who were not in uniform, identified themselves and asked her to get [Stackhouse] to come outside. [Stackhouse] "[c]ame out, swore at us a little bit, ran back in, and eventually we got him out of the house to talk to him." Tuttle's father and Tuttle's five-year-old son were also in the residence at the time. [Stackhouse] was handcuffed and placed on the ground as he was acting very "unruly" and "wild." After consulting privately with [Stackhouse], Tuttle gave the officers permission to search the residence and signed the consent form. The troopers agreed that [Stackhouse] was permitted to walk through the residence during the search.

[Stackhouse] took the officers through the house and while in his bedroom, pointed out a black box where he kept items he used for taking drugs. Additionally, several gallon-sized freezer bags were recovered containing meth oil; essentially a combination of Coleman fuel and methamphetamine, which was one step away from being converted into usable methamphetamine. [Stackhouse] was arrested and charged with various offenses.

On July 26, 2011, [Stackhouse] filed an omnibus pre-trial motion challenging the legality of the search. The motion was denied on September 2, 2011. Following a jury trial, [Stackhouse] was convicted of unlawful manufacturing of methamphetamine (child under 18 years of age present), possession of methamphetamine precursors with intent to manufacture methamphetamine, possession with intent to manufacture a controlled substance of 100 grams or more, possession of a controlled substance, and possession of drug paraphernalia; he was found not guilty of endangering the welfare of a child.

> [Stackhouse] was sentenced on January 26, 2012; with regard to his conviction for unlawful manufacturing of methamphetamine. [Stackhouse] was sentenced to 35 to 70 months' incarceration to be served concurrently with his sentence of 96 to 240 months for possession with intent to manufacture methamphetamine in excess of 100 grams.

*Commonwealth v. Stackhouse*, No. 338 WDA 2012, unpublished memorandum at 1-4 (citations omitted).

Stackhouse filed a timely PCRA petition on June 10, 2013, and on August 9, 2014, he filed a counseled amended petition. The PCRA court held a hearing on September 19, 2013, and by memorandum and order dated December 20, 2013, it denied the petition.

On appeal, Stackhouse raises the following issue and sub-issues for our review:

1. Whether the trial court erred as a matter of law in finding that [Stackhouse] failed to demonstrate the assertions forming the basis of [his] ineffective assistance of counsel claim were meritorious.

   A. Whether the trial court erred as a matter of law in finding that the consent given by Tuttle was [not] the result of coercion and that the evidence recovered during the subsequent search would not have been suppressed as the fruits of an illegal search.

   B. Whether the trial court erred in considering evidence not of record in violation of the procedural due process guarantees of the Fourteenth Amendment.

   C. Whether the trial court erred as a matter of law in finding that the search conducted by Trooper Walker did not exceed the scope of consent given by Tuttle and that the evidence recovered during the search would not have been suppressed as the fruits of an illegal search.

Brief of Appellant, at 4.[2]

In reviewing an appeal from the denial of PCRA relief, "our standard of review is whether the findings of the court are supported by the record and free of legal error." **Commonwealth v. Martin**, 5 A.3d 177, 182 (Pa. 2010) (citations omitted).

To be eligible for relief under the PCRA, Stackhouse must prove by a preponderance of the evidence that his conviction resulted from "ineffective assistance of counsel which, in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Ousley**, 21 A.3d 1238, 1244 (Pa. Super. 2011). To prevail on an ineffectiveness claim, the defendant must show that the underlying claim had arguable merit, counsel had no reasonable basis for his or her action, and counsel's action resulted in prejudice to the defendant. **Commonwealth v. Prince**, 719 A.2d 1086, 1089 (Pa. Super. 1998).

Stackhouse argues that his counsel was ineffective for failing to include in his omnibus pretrial motion a challenge to the validity of Tuttle's consent to search the property. At the PCRA hearing on September 19,

_____

[2] We have changed the order in which the issues are raised to facilitate our analyisis.

2013, Stackhouse called his trial counsel, Armand Cingolani, III, Esquire, as a witness. Attorney Cingolani testified that he believed Tuttle's consent was valid:

> This was her house. So did I presume that her consent was valid[?] [Y]es. And Mr. Stackhouse had by that time told me that he had led the police officer through the house and showed him stuff especially in the basement. So, I thought I would get myself into a trap denying consent whenever he was showing them around and consenting to them searching. So consent was not a focus of this because of his actions. It put me in the position of arguing there's no consent but I'm consenting, which is just absurd. So that's why I didn't do it.

N.T. PCRA Hearing, 9/9/13, at 20-21.

Attorney Cingolani testified that he chose not to address the validity of Tuttle's consent to search in the pre-trial motion or at trial. Regarding the pre-trial motion, he testified, "I did not think that consent, her consent would work nor did I know enough about it at the time nor could I have talked to her at the time. They would have all said this is not your client." *Id.* at 27. Rather, Attorney Cingolani's focus in the pre-trial motion was Stackhouse's lack of consent.

When asked whether he challenged Tuttle's consent at trial, Attorney Cingolani testified, "I chose not to because in my experience he could not use her consent or non-consent and I could not raise it. She was the renter of the property. He was a guest there." *Id.* at 28.

Based on Attorney Cingolani's testimony, it is clear that he had a reasonable basis not to challenge Tuttle's consent. *See Prince*, *supra*.

To prevail on a claim of ineffective assistance of counsel, Stackhouse had to prove there was arguable merit to his claim that Tuttle's consent to the search of the house was invalid. **See Prince**, **supra**. Here, the PCRA court did not have to speculate whether a court would have sustained a pre-trial challenge to Tuttle's consent because Tuttle, in fact, filed her own omnibus pretrial motion raising that claim, which the trial court denied. **Commonwealth v. Tuttle**, CP-10-CR-960-2011. Stackhouse asserts that the PCRA court's reliance on the findings of fact issued by the **Tuttle** court constitutes a violation of his Sixth Amendment rights because he was not a party to those proceedings and did not have the opportunity to cross-examine the troopers who testified at the hearing.

Had the PCRA court relied exclusively on the denial of Tuttle's pre-trial motion as a basis for finding a lack of arguable merit, we might have found some validity to Stackhouse's position. However, because the PCRA court had an independent basis on which to reach its conclusion that there was no arguable merit, we decline to grant relief on this issue.

Stackhouse further asserts that the PCRA court erred in finding that the search did not exceed the scope of consent given by Tuttle and that the evidence recovered during the search would not have been suppressed as the fruits of an illegal search. At the PCRA hearing, Tuttle testified:

> The first discussion [the officers] asked me if I would consent to the search of the home and I said no. The first time. They asked a second time, and I told them I would have to discuss it with Mr. Stackhouse before I made any answers for them. So, at the time I proceeded to speak with Mr. Stackhouse about

- 6 -

searching the premises, and the condition that we came up with that we agreed on was that I would sign the consent but Mr. Stackhouse had to escort the officers into the home.

N.T. PCRA Hearing, 9/19/13, at 76-77.

Based on the record developed at the PCRA hearing, the court concluded that Stackhouse did, in fact, accompany the officers during their search of the premises. Accordingly, it determined that the search did not exceed the scope of Tuttle's consent. Under these circumstances, there was no arguable merit to Stackhouse's claim that Attorney Cingolani's failure to raise the issue in a motion to suppress constituted ineffective assistance of counsel.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014