J-S70015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDRES MIGUEL MORALES | |
| Appellant | No. 595 EDA 2014 |

Appeal from the PCRA Order January 17, 2014
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0004512-2007

BEFORE:  LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 08, 2015**

Andres Miguel Morales appeals from the order of the Court of Common Pleas of Chester County that dismissed his petition brought pursuant to the Post Conviction Relief Act (PCRA).[1]  After careful review, we affirm.

This Court previously summarized the underlying facts as follows:

On July 9, 2007, [Morales], Richard Bermudez, Tyrell Jamar Jones, Carlos Bermudez, and Efrain Molina planned the armed robbery of Christian Oliveras, who was a drug dealer living at 317 South Adams St., West Chester.  Richard Bermudez and Molina, a frequent customer of Oliveras, orchestrated the crime while Carlos Bermudez obtained the gun.  Molina cased the home and reported to his co-conspirators.  [Morales] and Jones entered the home with the weapon.  Oliveras was in bed with his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

girlfriend and their baby and, after he resisted the armed robbers, was shot and killed.

***Commonwealth v. Morales***, No. 2584 EDA 2010, unpublished

memorandum at 1-2 (Pa. Super. filed November 22, 2011).

On August 22, 2007, Morales appeared before a grand jury investigating the murder, and testified that he was not in West Chester on the date of the crime. Approximately one month later, on September 25, 2007, Morales was interviewed by Corporal Scott Whiteside of the West Chester Police Department. Corporal Whiteside read Morales his ***Miranda*** warnings, and Morales agreed to continue the interview, which was recorded. Corporal Whiteside told Morales that he was investigating a homicide and that Morales was under arrest for perjury based on his grand jury testimony. Consistent with his grand jury testimony, Morales told Corporal Whiteside that he was not in West Chester on the date of the murder.

On October 28, 2008, West Chester Police arrested Morales, Jones, Molina, Richard Bermudez, and Carlos Bermudez for the robbery and murder of Oliveras.

> Molina, Richard Bermudez, and Carlos Bermudez pled guilty to third degree murder and agreed to testify against [Morales] at trial. Richard Bermudez related that [Morales] was aware of the planned robbery and that [Morales] saw the gun before he and Jones entered Oliveras' home. Carlos Bermudez indicated that following the murder, [Morales] was in possession of the weapon and confessed to being the shooter. Carlos disposed of the gun in a body of water in Maryland. Molina provided testimony largely consistent with that of the Bermudezes, although he could not identify Jones and [Morales].

- 2 -

Police obtained telephone records of Richard Bermudez's cell phone, which indicated that [Morales] and he telephoned each other five times around the time of the murder. [Morales'] car was used to transport the co-conspirators to and from the Oliveras' residence.

At trial, Jones, whom the trial court determined was not credible, claimed that Richard Bermudez accompanied him to the Oliveras home and shot the victim. [Morales], whom the trial court also determined was not credible, maintained that he was in the driver's seat of the car at the time of the robbery and was completely unaware that the other men were planning the crime. At trial, a Commonwealth witness identified Richard Bermudez as the driver of the car.

***Morales***, ***supra***, at 2-3.

Following a non-jury trial, the court convicted Morales of second-degree murder, robbery, reckless endangerment, and conspiracy. Under a separate docket number, the court convicted him of perjury. On April 5, 2010, he was sentenced to life imprisonment.

This Court denied Morales' direct appeal on November 22, 2011. On December 21, 2012, Morales filed a timely PCRA petition, and a hearing was held on September 25, 2013. On January 17, 2014, the court dismissed the petition, and this appeal followed.

Morales raises the following issues for our review:

1. Whether the PCRA court erred in denying [Morales'] petition for PCRA relief for ineffective assistance of counsel based on trial counsel's failure to file a meritorious motion to suppress [Morales'] grand jury testimony where [Morales] was denied counsel.

2. Whether the PCRA court erred in denying [Morales] relief under the PCRA for ineffective assistance of counsel based on trial counsel's decision to consolidate [Morales'] perjury case with his separate murder case, despite potential prejudice to [Morales].

3. Whether the PCRA court erred in denying [Morales'] petition for PCRA relief for ineffective assistance of counsel based on trial counsel's decision to call Tyrell Jones as a defense witness while recognizing the detriment to [Morales'] defense.

Appellant's Brief, at 3.[2]

In reviewing an appeal from the denial of PCRA relief, "our standard of review is whether the findings of the court are supported by the record and free of legal error." **Commonwealth v. Martin**, 5 A.3d 177, 182 (Pa. 2010) (citations omitted).

To be eligible for relief under the PCRA, Morales must prove by a preponderance of the evidence that his conviction resulted from "ineffective assistance of counsel which, in the circumstances of the particular case so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Ousley**, 21 A.3d 1238, 1244 (Pa. Super. 2011). To prevail on an ineffectiveness claim, the defendant must show that the underlying claim had arguable merit, counsel had no reasonable basis for his or her action, and counsel's action resulted

---

[2] Morales also includes in his statement of questions involved that the court erred in determining that counsel was not ineffective when she advised him to waive his right to a jury trial. However, Morales has withdrawn the claim. Appellant's Brief, at 13.

in prejudice to the defendant. ***Commonwealth v. Prince***, 719 A.2d 1086, 1089 (Pa. Super. 1998).

Morales first argues that trial counsel was ineffective for failing to seek suppression of his grand jury testimony because he was denied counsel. Prior to appearing before the grand jury, Morales was given a written colloquy, in which he answered "no" to the following question:  "In the event that you do not have an attorney, do you still wish to proceed today without an attorney?"  Witness Colloquy, 8/22/07, at 4.

After completing the written colloquy, Morales was brought before the supervising judge who asked if he had read the colloquy, to which he responded, "Yes."  Oral Colloquy, 8/22/07, at 2.  When the judge asked if he had any questions, Morales responded, "No."  ***Id.*** Morales then agreed to be sworn in, and stated that he would testify truthfully before the grand jury. ***Id.*** at 3.

At the commencement of the grand jury proceedings, Morales testified that he reviewed the colloquy and did not have any questions concerning his rights.  N.T. Grand Jury, 8/22/07, at 3.  When asked if he was prepared to testify and tell the truth, he responded, "yes."  ***Id.*** at 13.  Accordingly, even if Morales initially did not want to proceed without an attorney, he waived his right by testifying under oath that he was prepared to proceed.

The PCRA court properly noted that Morales' claim that counsel was ineffective for failing to file a motion to suppress is of arguable merit.

However, it also determined that counsel had a reasonable basis for her decision not to challenge the grand jury testimony. At the PCRA hearing, counsel testified:

> Mr. Morales told us that at the time that he made the statements to the grand jury, and at the time that he spoke to Whiteside, Richard Bermudez, Richard or Carlos Bermudez, one of the two were still out. So, he was concerned for his safety and the safety of his family. So, he was going to stick to his story even though there was ample evidence to show he was in West Chester.
>
> So, the position that we took was that we had initially requested to suppress the statements to Corporal Whiteside, but we decided to withdraw and argue that the lies during the grand jury and lies to Whiteside were the result of him being afraid of retaliation and harm coming to him and his family. And in our opinion, Mr. Morales had to testify in his trial because there were three other codefendants who were saying that he got out of the car and he was the shooter. So, he needed to get on the stand and dispute that.
>
> So, had he testified at his trial and testified inconsistent with the lies told in the grand jury and lies told to Whiteside, he could have been confronted with what he said in the grand jury and what he said to Whiteside.

N.T. PCRA Hearing, 9/25/13, at 31-32.

Trial counsel had a reasonable basis for failing to object to the admission of grand jury testimony that supported the theory that Morales consistently lied out of fear of retaliation against himself and his family. Accordingly, the PCRA court properly denied relief to Morales on this claim.

Morales next asserts that trial counsel was ineffective for requesting that his perjury case be consolidated with his murder case. He argues that if the cases had not been joined, evidence of perjury would only have been

admissible in his murder trial to impeach him if he testified. However, even if the cases had been tried separately, evidence of the perjury charges would have been admissible under the prior bad acts exception of Pa.R.E. 404(b). *See also Commonwealth v. Cristina*, 391 A.2d 1307 (Pa. 1978) (false denial of guilt by accused admissible as substantive evidence of consciousness of guilt).

At the PCRA hearing, trial counsel Amparito Arriaga, Esquire, testified that consolidating the perjury charge with the homicide charge benefitted Morales because the Commonwealth would have to prove the perjury beyond a reasonable doubt. Otherwise, the perjury charge stemming from Morales' lying to the grand jury would have been admissible under the lower standard for establishing prior bad acts or consciousness of guilt. N.T. PCRA Hearing, 9/25/13, at 66-67.

In addition, co-counsel Elizabeth Plesser-Kelly, Esquire, testified that by consolidating the cases, Morales avoided going into a murder trial already having a *crimen falsi* conviction on his record. *Id.* at 86. Accordingly, we agree with the trial court's conclusion that counsel had a reasonable strategy to consolidate the cases.

Morales' final argument is that trial counsel was ineffective for calling Tyrell Jones as a witness. By way of background, on October 15, 2007, Jones gave a confession admitting that he and Morales entered the Oliveras residence on July 8, 2007, and that Morales shot the victim. Jones later recanted the portion of his statement implicating Morales as the shooter.

Like Molina and the Bermudezes, Jones was offered an agreement to plead to third degree murder if he would testify that Morales was the shooter. While Molina and the Bermudezes took the deal, Jones did not. Following a trial, Jones was found guilty of first degree murder.

Morales argues that if his counsel had not called Jones to testify about his recanted confession, Jones' statement that Morales was the shooter could not have been introduced by the Commonwealth because it was hearsay. Accordingly, at trial, the Commonwealth would have had to rely on the statements of the three co-defendants who were identifying Morales as the shooter as part of their plea agreements. The testimony of these witnesses would have been subject to heightened scrutiny because it came from a corrupt and polluted source. However, because Jones was not testifying pursuant to a plea agreement, Morales asserts that Jones' prior statement implicating Morales "could have been given more credibility." Brief of Appellant, at 26.

At trial, Jones testified that on the day of the murder, Richard Bermudez threatened him with a gun and told him that he had to participate in a robbery in exchange for money Jones owed him. Bermudez told Jones to call someone who had a car, and Jones called Morales, and told him that he needed a ride. Morales went to Sam's Pizza Island where Jones, the Bermudezes and Molina got into the car. They did not tell him that they intended to commit a robbery. Jones further testified that it was Richard Bermudez, not Morales, who committed the murder, and that Morales, who

remained in the car, was unaware of the robbery or murder until they were completed.

Jones testified at trial that most of the information he provided to the police and his testimony before the grand jury was untruthful. He explained that he previously lied about Morales' involvement because Richard Bermudez threatened him if he did not do so. In support of his testimony he stated that he rejected an offer to plead guilty to third degree murder because he would have to testify against Morales and lie by saying that Morales was the shooter.

At the PCRA hearing, Attorney Arriaga testified regarding her strategy behind calling Jones as a witness. She noted that Jones was credible because he refused to accept a favorable plea agreement in exchange for implicating Morales. Moreover, because three other people involved in the case were going to testify that Morales was the shooter, it was necessary to have the only other participant corroborate Morales' testimony that he did not get out of the car, did not go into Oliveras' house, and did not shoot and kill Oliveras. N.T. PCRA Hearing, 9/25/13, at 22-25.

The Honorable Thomas G. Gavin, who presided over Morales' trial and the PCRA hearing, noted:

> Jones' testimony, if believed, exonerated [Morales] of the shooting and lent credence to why he, [Morales], lied to the grand jury and police. The fact that [Morales] was found guilty of felony murder, not murder in the first degree demonstrated that Jones' testimony was helpful, not hurtful.

PCRA Court Opinion, 1/17/14, at 10.

Accordingly, we agree with the PCRA court that counsel had a reasonable basis for calling Jones as a witness, and therefore he is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/8/2015