**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN TAFT | |
| Appellant | No. 1637 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 8, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000818-2017

BEFORE:  BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                    Filed: October 1, 2020

Appellant, Steven Taft, appeals from his judgment of sentence of two to four years' imprisonment for sexual assault, 18 Pa.C.S.A. § 3124.1.  Appellant challenges the sufficiency and weight of the evidence.  We affirm.

The trial court accurately recounted the factual and procedural history as follows:

> The charge in question arises from an incident in the early morning hours of September 4, 2016.  On the evening of September 3, 2016, the victim, S.K., attended a party at an apartment on Temple University's campus, which Appellant shared with several roommates.  S.K. went to the party accompanied by her friend, Tess Mariani (Tess), and another friend.
>
> S.K. met Appellant for the first time at the party and had no physical contact with him during the evening, nor did they discuss sex or sexual relationships.  After being at the apartment for approximately five hours, S.K. and Tess decided around 3:00 a.m.

_____

[*] Retired Senior Judge assigned to the Superior Court.

to sleep there and Appellant offered for them to stay in his bedroom and provided them with over-size T-shirts in which to sleep. Appellant was not in the room when S.K. fell asleep and was not supposed to stay in the room.

After falling asleep, S.K. awoke to find Appellant penetrating her with his finger. S.K. testified that she "laid still," "didn't move a muscle," and [did not] make any noise. Appellant then moved her onto her side, removed her underwear, and penetrated her vagina with his penis. While Appellant was having intercourse with her, S.K. remained motionless, did not communicate with Appellant and wanted to, "act as if asleep." At no time did S.K. verbally express her consent to the intercourse.

S.K. further stated that throughout the incident, she did not alert Tess because she did not know what she (S.K.) would say to [Tess]. As the incident occurred, S.K. thought to herself that she wanted to leave.

S.K. testified that she did not want any of the sexual contact and that she and Appellant had never discussed having sexual contact. When Appellant eventually ejaculated on her back, S.K. went into the bathroom. Tess also awoke at that time and followed her into the bathroom where she found S.K. crying. S.K. informed her that she had been raped.

S.K. and Tess then decided to call an Uber and go home. [Appellant] left the room for them to get changed and then offered to walk them to Morgan Hall on Temple's campus. S.K. did not want to disturb her parents in the early hours of the morning so the women took an Uber to a friend's house in Oreland, PA., which S.K. considered a "safe zone." S.K. eventually went to S.K.'s father's house and informed him what had occurred. S.K.'s father then called her mother. Her parents called the police and the three of them went to Abington Hospital where swabs of S.K.'s mons pubis and perianal area were administered by a sexual assault nurse examiner.

A subsequent DNA analysis of a sperm fraction detected in the rectal swab taken from S.K. revealed a DNA mixture 302.3 quintillion times more likely to have originated from S.K. and Appellant than S.K and a random unrelated Caucasian person, while the major DNA component of the sperm fraction found in the vaginal vault swab matched [Appellant]'s DNA profile.

Appellant was arrested on January 10, 2017 and charged with the above offenses. On November 7, 2018, the case proceeded to a jury trial before the Honorable Diana L. Anhalt. At trial the Commonwealth's evidence recounted the above events. Appellant, in turn, testified on his own behalf and admitted to engaging in sexual intercourse with S.K. and likewise admitted that S.K. had never given verbal consent for sex. Appellant, however, contended that while touching S.K.'s vagina and while engaging in sexual intercourse he believed she had, "moved toward him," "pushing back up against him." The jury rejected Appellant's claim of consent and on November 9, 2017, the jury returned a verdict of guilty of sexual assault.[1]

Trial Court Opinion, 5/20/19, at 1-4 (record citations omitted).

On May 8, 2019, the trial court imposed sentence. Appellant filed timely post-sentence motions challenging the sufficiency and weight of the evidence, which the court denied, and a timely appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal, which we re-order for purposes of convenience:

1. Did the trial court abuse err when it denied Appellant's post-sentence motion that the evidence presented at trial was insufficient as a matter of law to find Appellant guilty of sexual assault?

2. Did the trial court err when it denied Appellant's post-sentence motion that the jury's guilty verdict to the charge of sexual assault was against the weight of the evidence?

Appellant's Brief at 4.

---

[1] The jury acquitted Appellant of indecent assault and aggravated indecent assault.

When reviewing a challenge to the sufficiency of the evidence, we determine "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense." *Commonwealth v. Cline*, 177 A.3d 922, 925 (Pa. Super. 2017). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013).

The Crimes Code defines the crime of sexual assault as follows: "Except as provided in [18 Pa.C.S.A. §] 3121 (relating to rape) or [18 Pa.C.S.A. §] 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse . . . with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1.

Since Section 3124.1 does not prescribe the culpability sufficient to establish each material element of the offense, the defendant's culpability is established if he acts intentionally, knowingly or recklessly with respect to each such element. 18 Pa.C.S.A. § 302(c); *Commonwealth v. Carter*, 418 A.2d 537, 542-43 (Pa. Super. 1980). Of these three levels of intent, recklessness requires the least level of proof. *Carter*, 418 A.2d at 543. Section 302 defines recklessness as follows:

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). In accordance with these precepts, the trial court instructed the jury that to prove sexual assault, the Commonwealth had to establish beyond a reasonable doubt that Appellant "acted knowingly or at least reckless[ly] regarding S.K.'s non-consent." N.T. 11/8/18, at 78.

To prove sexual assault, it is not necessary for the Commonwealth to establish that the victim resisted the assault. *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa. Super. 2006). The uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses. *Commonwealth v. Cramer*, 195 A.3d 594, 602 (Pa. Super. 2018).

Here, the trial court reasoned:

[T]he victim testified—and Appellant admitted—that Appellant engaged in sexual intercourse with the victim. The victim testified that she did not consent to the intercourse, did not have physical contact with Appellant throughout the evening, never talked to Appellant about engaging in sexual activity, and did not want any of the sexual contact that occurred. She never verbally consented to sex and remained motionless throughout the incident without moving a muscle. Finally, the victim immediately reported the crime after the incident and immediately left Appellant's residence in the wee hours of the morning. In addition, Tess corroborated the victim's testimony that she did not have physical contact with

- 5 -

Appellant throughout the evening. Tess further indicated that the victim was crying immediately after the incident and immediately reported that she had been raped.

When viewed in a light most favorable to the Commonwealth, such evidence was clearly sufficient to sustain Appellant's conviction. *Audrulewicz*, *supra* (testimony of victim that defendant pushed her onto bed, removed her clothes and had sexual intercourse with her sufficient to establish sexual assault); *Commonwealth v. Prince*, 719 A.2d 1086, 1089 (Pa. Super. 1998) (evidence victim did not consent to sexual intercourse and stayed near defendant all night out of fear for safety sufficient to sustain conviction for sexual assault).

Trial Court Opinion, 5/20/19, at 6-7. We agree with this analysis.

Appellant argues that the evidence did not establish that he acted recklessly with regard to S.K.'s absence of consent. We disagree. Multiple facts demonstrate Appellant's reckless disregard for S.K.'s lack of consent. S.K. and Appellant had never met before the evening of this incident. During the hours before intercourse, they did not have any romantic or sexual interactions. They did not kiss, hold hands, discuss sex or sexual relationships, or even have a conversation alone together. S.K. spent the entire night with her best friend, Tess, because she did not know the people at the party. When S.K. and Tess agreed to stay over, Appellant left the room while S.K. changed her clothes before going to bed so he did not see her undressed. S.K. and Tess opted to sleep in a bed alone together, while Appellant was expected to sleep elsewhere. S.K. wore clothing while she slept. Nonetheless, she woke up to find Appellant's fingers in her vagina before he penetrated her with his penis. Appellant admitted that he did not

ask S.K. whether she was okay or wanted to have sex at any point in time. Instead, he made a deliberate decision to disregard the risk that she did not want to have intercourse and penetrated her anyway. Appellant admitted that the only thing S.K. did that he interpreted as indicating her consent was touching his hand during the party. The mere touching of Appellant's hand hours earlier was nowhere close to consent to full-fledged sexual intercourse with someone S.K. barely knew.

For these reasons, Appellant's challenge to the sufficiency of the evidence fails.

Next, Appellant argues that the verdict is contrary to the weight of the evidence. We disagree.

The law pertaining to weight of the evidence claims is well-settled.

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and internal quotation marks omitted).

In our view, the trial court acted within its discretion by concluding that the verdict did not shock its conscience. S.K. testified, and Appellant admitted, that Appellant engaged in sexual intercourse with her. S.K. testified that she did not consent to the intercourse, did not have physical contact with Appellant throughout the evening, never talked to Appellant about engaging in sexual activity, and did not want any of the sexual contact that occurred. She never verbally consented to sex and remained motionless throughout the incident without moving a muscle. She did not kiss Appellant, touch him or otherwise indicate that she wanted to engage in intercourse. Nor did Appellant ask for her consent or even speak to her during the incident. While Appellant claimed that S.K. moved closer to him during intercourse, S.K. contradicted Appellant by stating that he moved her body. Although S.K. did not resist, the crime of sexual assault does not require proof that she resisted. Following the incident, S.K. immediately left Appellant's residence and reported the crime. In addition, Tess corroborated S.K.'s testimony that she did not have physical contact with Appellant throughout the evening. Tess indicated that S.K. was crying immediately after the incident and immediately reported that she had been raped. In light of this testimony, the jury's decision to credit S.K.'s testimony and find that she did not consent to intercourse in no way shocks the conscience.

For these reasons, Appellant's challenge to the weight of the evidence fails.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Colins concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/1/20