J-S34041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC SHAWN WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1209 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 22, 2023
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0002029-2022

BEFORE:   DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED: October 29, 2024**

Appellant, Eric Shawn Williams, appeals from the judgment of sentence entered in the Court of Common Pleas of Fayette County following his conviction by a jury on the charges of unlawful restraint, simple assault, and strangulation.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On July 6, 2022, the Pennsylvania State Police were dispatched to investigate the assault of the victim ("Victim"). Appellant was arrested and charged with several crimes in connection with the assault, which occurred in Uniontown, Pennsylvania.  On August 7, 2023, Appellant, represented by counsel,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2902(a)(1), 2701(a)(1), and 2718(a)(1), respectively.

proceeded to a jury trial. The trial court has aptly summarized the testimony offered by Victim as follows:

Victim provided testimony at trial that, on or around June 29, 2022, while cleaning at a friend's house, Appellant[, with whom Victim had an "on and off relationship,"] entered the house and proceeded to argue with her. [N.T., 8/7/23, at 20-21.] Victim [testified] that she tried to walk to her friend's house down the street, but Appellant redirected her up the alley. [*Id.*] at 24. Appellant did this by placing Victim on the side of a streetlight and beating her with a gun. [*Id.*] [Victim testified she "begged him to stop." *Id.* at 26.] After this, Victim testified that Appellant dragged her to his residence some distance up the street, and when Victim tried to wrap her body around a streetlight and go limp, Appellant picked her up and carried her the rest of the way. [*Id.*]

Victim testified [she asked Appellant not to hurt her,] and the first night she was at [Appellant's] residence, [he "babied" her. *Id.* at 27.] [T]hey got high on drugs. [*Id.*] The next morning, [Appellant's demeanor changed, and] Victim awoke to a "throat punch" by Appellant while he accused [her] of participating in sexual activity with another person. [*Id.*] [Appellant then beat Victim with his hands and a cane. *Id.* at 27-28.] Victim [testified] Appellant put [screw drivers against the frame of the door, as well as pushed the kitchen table, the deep freezer, chairs, and a small mini heater against the door] to prevent her escape from the residence. *Id.* at 28. [Victim testified she "wasn't allowed" to leave. *Id.*]

Next, Victim proceeded to provide testimony to…the instances of abuse [she suffered at the hands of Appellant while he blockaded her in his residence.] [She testified Appellant cut her with a knife] resulting in lacerations on her stomach, chest, back, left hand, and her right arm and leg. [*Id.*] at 27-28, 30, 35-37, 39. Victim [testified] she was also subjected to beatings during the duration of her captivity, and [the Commonwealth] produced numerous photographs depicting her body covered in bruises.[2] [*Id.*] at 30. Victim testified that Appellant strangled her upwards of four times by wrapping [both] his hands around her neck and

_____

[2] Victim confirmed the injuries in the photographs were caused by Appellant during her captivity. *Id.*

applying pressure to [her] throat and chest area. [*Id.*] at 38. ["He choked her out four times." *Id.* As a result of the strangulations, Victim had "trouble talking for a month." *Id.* She also testified Appellant used a box cutter to cut her waist-length hair to "a fourth of an inch from [her] head." *Id.*]

[Appellant remained at the residence and "would never leave her." *Id.* at 31. Victim was scared. *Id*.] To escape, Victim told Appellant that she had to go the Magistrate's office to pay delinquent fines because if a warrant was issued the police would potentially find her at Appellant's location. [*Id.*] at 59. [On July 6, 2022,] Victim was permitted to leave the residence, and [she immediately] alerted the police to what had transpired the preceding days. [She also went to the hospital for treatment. *Id.* at 34.] [During the jury trial, Victim positively identified Appellant as the person who kept her in captivity and assaulted her. *Id.* at 41.]

Trial Court Opinion, filed 11/29/23, at 1-3 (footnote added).

Appellant's adult daughter testified. She indicated that, on July 3, 2022, she drove Appellant and Victim to the grocery store. N.T., 8/7/23, at 66. She also testified she saw Appellant and Victim on July 4, 2022. *Id.* at 67. Specifically, she testified she took them food, and they both came to the car to retrieve it. *Id.* She did not observe any injuries to Victim on either occasion. *Id.* at 66-67.

Appellant testified in his own defense. Specifically, he denied he ever held Victim against her will, and he testified he was working out of town from June 27, 2022, to July 2, 2022. *Id.* at 71. Appellant indicated Victim came to his house willingly on July 3 and 4, 2022. *Id.* at 72. Appellant specifically denied that he ever prevented Victim from leaving his home, struck her, cut her, or beat her. *Id.*

Moreover, Sean Mahoney, who works in construction, testified he used "day laborers" for "spot labor." N.T., 8/8/23, at 83. He clarified the laborers did not work directly for him but worked for his clients. *Id.* He testified Appellant was one such day laborer, and although he could not recall the exact dates, he believed Appellant was working in "June maybe. July [of 2022.]" *Id.* at 84. He testified Appellant spent one night out of town for work; however, he could not remember the exact date. *Id.*

At the conclusion of trial, the jury convicted Appellant of the offenses *supra*, and on August 22, 2023, Appellant proceeded to a sentencing hearing. The sentencing court imposed an aggregate sentence of four years to eight years in prison. Appellant filed a post-sentence motion *nunc pro tunc* on September 5, 2023,[3] and on September 12, 2023, the trial court summarily denied Appellant's post-sentence motion. This counseled appeal followed on October 11, 2023.[4] The next day, on October 12, 2023, the trial court filed

_____

[3] In his post-sentence motion, Appellant averred the jury's verdicts were against the weight and sufficiency of the evidence.

[4] Because Appellant's judgment of sentence was imposed on August 22, 2023, he had ten days, until September 1, 2023, to file a timely post-sentence motion. *See* Pa.R.Crim.P. 720(A)(1). However, Appellant did not file a counseled post-sentence motion until September 5, 2023, and he filed his notice of appeal on October 11, 2023. Generally, an untimely post-sentence motion does not toll the thirty-day period in which a defendant may file a notice of appeal. *See Commonwealth v. Green*, 862 A.2d 613 (Pa.Super. 2004) (*en banc*). Further, while Appellant titled his post-sentence motion as "*nunc pro tunc*," the motion itself contained no request for *nunc pro tunc* relief, and the trial court did not expressly grant Appellant permission to file a post-
*(Footnote Continued Next Page)*

an order directing Appellant to file a Pa.R.A.P. 1925(b) statement,[5] Appellant timely complied on October 18, 2023, and the trial court filed a Pa.R.A.P. 1925(a) opinion on November 29, 2023.

On appeal, Appellant challenges the sufficiency of the evidence supporting his convictions.[6]  As with any claim that contests whether there

_____

sentence motion *nunc pro tunc*.  **Commonwealth v. Capaldi**, 112 A.3d 1242 (Pa.Super. 2015).
    Nevertheless, the record is clear that the trial court failed to provide Appellant with his post-sentence rights during sentencing. **Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa.Super. 2007) (explaining that "courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise Appellant of his post-sentence and appellate rights or misadvised him") (citations omitted)). Moreover, in the September 12, 2023, order purporting to deny Appellant's untimely post-sentence motion, the trial court failed to provide Appellant with notice of his appellate rights or explain the time he had left to file a timely notice of appeal.  **See id.** Thus, as we discern a breakdown in the trial court, we shall permit this appeal to proceed.

[5] We note the contents of the trial court's order does not comply with Pa.R.A.P. 1925(b)(3) in that it does not designate "the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement."  Pa.R.A.P. 1925(b)(3)(iii).  Accordingly, to the extent the trial court suggests in its Rule 1925(a) opinion that Appellant waived certain sufficiency of the evidence claims by failing to include the claims in his court-ordered Rule 1925(b) statement, we disagree.  Simply put, when a court's Rule 1925(b) order "is inconsistent with the requirements of Rule 1925(b)(3)(iii),…the waiver provisions of subsection (b)(4)(vii) do not apply." **Rahn v. Consolidated Rail Corp.**, 254 A.3d 738, 746 (Pa.Super. 2021) (citation omitted).

[6] In his "Statement of Questions Involved," Appellant contends he is challenging the "weight of the evidence" as to the jury's verdicts.  **See** Appellant's Brief at 7.  However, in the "Summary of Argument," as well as in the "Argument" sections of his brief, including the subheading of each argument, Appellant avers he is challenging the sufficiency of the evidence
*(Footnote Continued Next Page)*

- 5 -

was sufficient evidence to sustain a conviction, we employ a well-settled series of legal precepts:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa.Super. 2001) (citations and quotation marks omitted).

In his first issue, Appellant challenges the sufficiency of the evidence supporting his conviction for unlawful restraint. Specifically, he avers there is insufficient evidence to demonstrate that Victim "was exposed to risk of

supporting his convictions. Our review confirms Appellant has developed sufficiency of the evidence claims, which are distinct from weight of the evidence claims. ***See Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745 (2000). Although Appellant's "Statement of Questions Involved" does not wholly correspond to the "Argument" portion of his brief, our review has not been meaningfully impeded, and, consequently, we shall review Appellant's sufficiency of the evidence claims.

serious bodily injury after…Appellant blocked the only exit from his home.  No alleged harm came to [Victim] following the alleged blocking of the door. Any alleged harm…that occurred, came prior to Appellant…blocking the door." Appellant's Brief at 15.

The Crimes Code defines unlawful restraint as follows:

**§ 2902. Unlawful restraint**

**(a) Offense defined.--**Except as provided under subsection (b) or (c), a person commits a misdemeanor of the first degree if he knowingly:

    (1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury[.]

18 Pa.C.S.A. § 2902(a)(1) (bold in original).

Moreover, "serious bodily injury" is defined in 18 Pa.C.S.A. § 2301 as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

This Court has recognized the crime of unlawful restraint requires proof of a restraint more serious than the offense of false imprisonment, which requires proof only that the defendant knowingly restrained the victim unlawfully so as to interfere substantially with the victim's liberty. ***See Commonwealth v. Prince***, 719 A.2d 1086 (Pa.Super. 1998).  To prove the unlawful restraint offense of which Appellant was convicted, the Commonwealth must prove both that Appellant knowingly restrained the victim unlawfully and Appellant's conduct exposed the victim to an actual risk

of serious bodily injury. 18 Pa.C.S.A. § 2902(a)(1); ***Commonwealth v. Schilling***, 431 A.2d 1088, 1091-92 (Pa.Super. 1981). "[M]ere apparent ability to inflict harm is not enough" to show that someone has been exposed to the risk of serious bodily injury. ***Id.*** Instead, "actual danger of harm must be shown." ***Id.***

Here, Victim testified Appellant blocked the only exit and would not permit her to leave for days. This was sufficient to demonstrate Appellant knowingly restrained Victim unlawfully. ***See id.*** Moreover, we conclude the Commonwealth adequately proved Appellant's conduct exposed Victim to an actual risk of serious bodily injury. Victim testified Appellant blocked the door "the very next morning" after he dragged her to his residence. N.T., 8/7/23, at 28. She testified that, while she was blockaded in the room, Appellant cut her several times with a knife, punched her, hit her with a cane, and "choked [her] out four times." ***Id.*** at 38. During one of the chokings, Victim involuntarily defecated in her pants. ***Id.***

We find the Commonwealth established that the surrounding circumstances were inherently dangerous and exposed Victim to an actual risk of serious bodily injury. ***See Commonwealth v. Melvin***, 572 A.2d 773 (Pa.Super. 1990) (holding evidence sufficient for unlawful restraint where there were inherently dangerous circumstances showing the defendant had placed the victim in danger of serious bodily harm). Thus, we find the evidence was sufficient to sustain Appellant's conviction for unlawful restraint.

In his next issue, Appellant contends the evidence was insufficient to sustain his conviction for simple assault. Specifically, he avers the Commonwealth failed to prove Appellant attempted to cause or intentionally, knowingly, or recklessly caused body injury to Victim.

Under subsection 2701(a)(1) of the Crimes Code, a person is guilty of simple assault if he or she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Bodily injury requires an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. "The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa.Super. 1994).

> To show an "attempt" to inflict bodily injury, it must be shown that the actor had a specific intent to cause bodily injury[.] A person acts intentionally with respect to a material element of an offense if "it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i).

*Id.* (some internal citation, quotation marks, and brackets omitted).

Here, assuming, *arguendo*, Appellant did not cause bodily injury to Victim, we conclude Appellant attempted to cause bodily injury to Victim. Specifically, Appellant's punching, cutting, and choking of Victim was sufficient to demonstrate he intended to cause Victim bodily injury. *See*

***Commonwealth v. McBride***, 2021 WL 3015320, *3 (Pa.Super. filed 7/16/21) (unpublished memorandum)[7] ("[The appellant's acts of throwing, punching, and choking [the complainant] were sufficient [for the] court to conclude that the appellant intended to cause the complainant bodily injury."). Thus, we find no merit to Appellant's second issue.

Appellant next contends the evidence was insufficient to sustain his conviction for strangulation. Specifically, Appellant contends the Commonwealth failed to prove Appellant impeded the breathing of Victim or circulation of Victim's blood.

The offense of strangulation is defined as follows:

**(a) Offense defined**.--A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

(1) applying pressure to the throat or neck.

18 Pa.C.S.A. § 2718(a) (bold in original).

Moreover, "[i]nfliction of a physical injury to a victim shall not be an element of the offense. The lack of physical injury to a victim shall not be a defense in a prosecution under this section." 18 Pa.C.S.A. § 2718(b). Still, a person is not guilty of this offense unless he acted intentionally or knowingly with respect to each material element of the offense. ***See*** 18 Pa.C.S.A. § 302 (minimum requirements of culpability).

---

[7] ***See*** Pa.R.A.P. 126(b) (stating this Court may cite to and rely on for persuasive value unpublished decisions of this Court filed after May 1, 2019).

Section 302(b) provides:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b). "Intent can be proven by circumstantial evidence and may be inferred from the defendant's conduct under the attendant circumstances." *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa.Super. 2003).

Here, the Commonwealth offered into evidence photographs depicting the marks on Victim's neck. The relevant exchange then occurred between the assistant district attorney and Victim:

Q. How about this photograph?
A. Those are strangulation marks to my neck.
Q. When you say strangulation marks, what did he do specifically to your neck area?
A. He strangled it.
Q. How did he do that?
A. With his hands….

- 11 -

Q. And when you said he used his hand, did he use one hand or both hands?

A. Both.

Q. What did he do with those hands? Did he grab your neck?

A. Yes.

Q. Your throat?

A. And then the chest to hit right here so it cuts the airway off.

Q. Did you have trouble breathing?

A. I had trouble talking for a month.

Q. When he was doing this to you, did you have difficulty breathing as a result of him choking you?

A. He choked me out four times. The one time he choked me out I defecated my pants.

N.T., 8/7/23, at 38.

Based on Victim's testimony, we conclude Appellant knowingly or intentionally impeded the breathing or circulation of Victim's blood by applying pressure to her throat or neck. Simply put, Victim testified Appellant "choked her out" four times, and one time, she was choked to the point she involuntarily defecated. Thus, the evidence was sufficient to sustain Appellant's conviction for strangulation. *See* 18 Pa.C.S.A. § 2718(a)(1); *Commonwealth v. Fuentes*, 2020 WL 4370959, *1 (Pa.Super. filed 7/30/20) (unpublished memorandum) (holding the Commonwealth

established strangulation where the victim testified the defendant "choked [her] out").[8]

     For all of the foregoing reasons, we affirm.

     Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/29/2024

---

[8] We note that, throughout the "Argument" section of his brief, Appellant suggests the evidence was insufficient to sustain his convictions because there was no evidence he was the perpetrator of the crimes. We reject this contention by noting Victim specifically identified Appellant in court as her attacker. Moreover, we note Appellant contends generally that the jury's verdicts were against the weight of the evidence because Appellant testified he was out of town or otherwise presented his daughter as an alibi defense. Assuming, *arguendo*, the issue is preserved, we conclude the trial court properly exercised it discretion in rejecting the claim. ***See Commonwealth v. Williams***, 176 A.3d 298, 312 (Pa.Super. 2017) ("The function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence."). Simply put, as the trial court found, the jury was free to weigh the evidence, believe the Victim's testimony, and reject Appellant's self-serving evidence. ***See*** Trial Court Opinion, filed 11/29/23, at 7. The fact the jury believed Victim did not result in a verdict "so contrary to the evidence as to shock one's sense of justice." ***See Williams***, ***supra***.